## COMMONWEALTH *vs.* SHAWN BOUCHER.

Middlesex.   October 6, 1988. — January 3, 1989.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Homicide. Malice. Practice, Criminal,* Instructions to jury. *Self-Defense.*

At a murder trial where the defendant argued that he had acted reasonably in self-defense, the judge's failure to instruct the jury that there could be no finding of malice if the prosecution had not proved the absence of provocation beyond a reasonable doubt, created the significant possibility that the defendant was erroneously convicted of murder in the first degree, instead of manslaughter, and a new trial was required. [661-663]

At a murder trial where the defendant raised the issue of self-defense, the judge's failure properly to instruct the jury as to the use of excessive force created the possibility that the defendant was erroneously convicted of murder in the first degree, instead of manslaughter, and a new trial was required. [663-664]

INDICTMENT found and returned in the Superior Court Department on May 31, 1985.

The case was tried before *Hiller B. Zobel,* J.

*Robert L. Sheketoff* for the defendant.

*Edward D. Rapacki,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant, convicted of murder in the first degree and represented by new counsel on appeal, correctly points to two substantial errors in the judge's charge concerning manslaughter. The Commonwealth grants that the judge erred but argues that, because the jury found the defendant guilty of deliberately premeditated murder, those errors, not raised adequately before the trial judge, do not create a substantial likelihood that a miscarriage of justice has occurred (*Commonwealth* v. *Stewart,* 398 Mass. 535, 544 [1986]), thus calling

for relief under G. L. c. 278, § 33E (1986 ed.).[1] Although we regret that this case must be retried, we conclude that the judge's errors require us to reverse the conviction of this young man, who was seventeen years old at the time of the victim's death and was sentenced to life imprisonment without the possibility of parole.

On April 21, 1985, the defendant stabbed the victim on a street in Arlington. The victim, who was nineteen years old, died three days later. The victim was one of a group of young friends who, after consuming alcoholic beverages in a home in Framingham on the night of April 20, decided to drive to Somerville. They used three motor vehicles; the victim was alone in his. The group became separated, but subsequently they all gathered at a restaurant on Massachusetts Avenue in Arlington. Around midnight they decided to go to Woburn. All the vehicles turned into Academy Street to reverse direction. The victim drove farther down the street than the others and encountered four young men, one of whom was the defendant, standing in the road blocking his way.

The defendant, a seventeen year old Arlington high school student who was interested in weight lifting, was carrying in his pocket a knife with a four-inch blade. Earlier in the night, the defendant and others had been drinking alcoholic beverages at a restaurant in Cambridge and, later, in the vicinity of Spy Pond in Arlington. Shortly before midnight, the four young men started walking along Massachusetts Avenue in Arlington, eventually going down a side street, through the grounds of a library, and down Maple Street to its intersection with Academy Street. It was near that spot that the victim by chance met the four young men who, on seeing the victim's car coming down Academy Street, decided at the defendant's suggestion to "be a pain in the ass" and block the road. The defendant and his

---

[1] The defendant's best arguments on the evidence were that he was not guilty because he acted in self-defense, or at least that he was guilty only of manslaughter because he acted on reasonable provocation. The defendant's trial counsel totally overlooked one of the errors in the charge, and silently accepted the other after raising the point in his requests for instructions and at the charge conference.

friends exchanged insults with the victim who, after a short time, drove off.

After going out of sight, the victim turned his vehicle around and headed back toward the four young men. He stopped his vehicle three or four houses from where the defendant and the three other young men were standing, got out of his vehicle, and ran toward the four. The victim and the defendant fought. There was evidence that the victim, who was a student of karate, delivered a kick to the defendant's head and continued to attack the defendant. There was also evidence that the defendant had his knife in his right hand and that he stabbed the victim. After several seconds, the victim, who had been stabbed five times and fatally wounded by a deep stab wound to the heart, ran back to his vehicle and drove off. At Massachusetts Avenue the victim drove past his friends who had been waiting for him. Shortly thereafter he collapsed, and his vehicle went off the road.

Although the defendant and his friends tried to conceal their involvement in the events on Academy Street, investigation led the police to them. The district attorney advised each of the three friends that they would not be prosecuted in connection with the victim's death if they testified honestly at trial. All three did testify at trial, as did the defendant. The defendant admitted that he had swung the knife at the victim but could not remember where he might have stabbed him. He testified that, because he could not escape and feared for his life, he had pulled out his knife and had swung out "a whole bunch of times."

The defendant's trial strategy was to argue that he had acted reasonably in self-defense. His counsel also argued to the jury that the defendant's intoxication made any finding of deliberate premeditation and malice inappropriate. We need only discuss the defendant's challenges to the judge's charge on manslaughter and on self-defense. A new trial is required.

1. The judge's first error was that he failed to tell the jury that, if the Commonwealth had not proved the absence of provocation beyond a reasonable doubt, there could be no finding of malice and hence no conviction of murder. Malice

and adequate provocation are mutually exclusive. See *Commonwealth* v. *Doucette,* 391 Mass. 443, 452-453 (1984); *Commonwealth* v. *Fitzgerald,* 380 Mass. 840, 846 (1980); *Lannon* v. *Commonwealth,* 379 Mass. 786, 790 (1980); *Commonwealth* v. *Peters,* 372 Mass. 319, 325 (1977). On the judge's charge the jury could have found both provocation and malice. In the absence of a further instruction that a finding of malice could could not be made if a killing arises "from a sudden transport of passion or heat of blood upon a reasonable provocation" or "upon sudden combat" (*Commonwealth* v. *Soaris,* 275 Mass. 291, 299 [1931]), the jury could have found the defendant guilty of murder, even though they held a reasonable doubt whether the defendant acted without provocation.[2]

The Commonwealth's argument that all this is of no consequence because the jury found deliberate premeditation, and thus any error in the charge could not have hurt the defendant, is not persuasive. If the jury concluded, as they could have on the instructions, that the defendant may have reacted to reasonable provocation but also acted with malice, the jury readily could have concluded that the defendant also acted with deliberate premeditation. In the view of a lay person, one who acts

---

[2] The judge never used the word "malice" in his jury charge. In defining the crime of murder, he accurately stated the elements that make up malice. We do not say that a proper charge could not be given without using the word "malice."

In explaining the elements of the crime of voluntary manslaughter, we think it desirable that a judge state that a homicide cannot be murder, with its element of malice, but is only manslaughter when the killing is from a sudden transport of passion or heat of blood upon a reasonable provocation or upon sudden combat. In order to understand that reasonable provocation negates malice, the jury must first understand what malice is. Malice is "any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow." *Commonwealth* v. *Huot,* 380 Mass. 403, 408 (1980). Our experience shows that trial judges generally first instruct on murder and then turn to any relevant lesser included offense. In this way, the concept of malice, as essential to murder and absent from manslaughter, aids the jury in distinguishing between the two crimes. By starting his description of the crimes with the least of the lesser included offenses and moving upward, the trial judge denied himself the usual opportunity to use the presence or absence of malice to distinguish between the crimes of murder and voluntary manslaughter.

on reasonable provocation could still deliberately premeditate his intention to kill or do grievous bodily harm. The law says, however, that the crime is voluntary manslaughter, not murder, if malice is negated by reasonable provocation or sudden combat (or at least by a reasonable doubt whether those conditions were absent).

The judge never identified, in any form of words, the "malice" — "no malice" fork in the road. Inherent in the defendant's argument that he was not guilty because he had acted in self-defense was his reliance on provocation to mitigate the charge of murder to manslaughter, if the self-defense claim were to fail. Thus the judge's omission created the significant possibility that the defendant was erroneously convicted of murder in the first degree instead of manslaughter.

2. Another error in the charge also may have led the jury to a murder verdict when, if properly instructed, they might have returned a verdict of guilty of voluntary manslaughter.

In explaining self-defense the judge first correctly told the jury that, "[i]f the government proves beyond a reasonable doubt that there was no necessity to avoid grievous, serious bodily harm, there's no more consideration of self-defense." See *Commonwealth* v. *Stokes,* 374 Mass. 583, 591 (1978) (burden of proof); *Commonwealth* v. *Houston,* 332 Mass. 687, 690 (1955); *Commonwealth* v. *Woodward,* 102 Mass. 155, 161 (1869). He then added, also correctly, that one "may use only that amount of force that's reasonably necessary to avoid the grievous bodily harm." *Commonwealth* v. *Kendrick,* 351 Mass. 203, 211 (1966). Nowhere, however, did the judge tell the jury that, if the defendant was privileged to use force to defend himself but the Commonwealth proved beyond a reasonable doubt that the defendant used excessive force, the defendant would be guilty only of manslaughter, not murder. See *Commonwealth* v. *Burbank,* 388 Mass. 789, 795 (1983); *Commonwealth* v. *Stokes, supra* at 593-594. The judge's charge made it appear that, if the defendant was privileged to use some force in self-defense but used excessive force, the

issue of self-defense would drop out of the case and any killing in such a situation would be murder and not manslaughter.[3]

A charge on self-defense was required. Here, certainly on the evidence most favorable to the defendant (and perhaps on any reasonable view of all the evidence), the victim attacked the defendant, delivering a karate kick to the defendant's head. There was further evidence from which the jury would have been warranted in concluding that the Commonwealth had not proved beyond a reasonable doubt that the defendant had no right to act in self-defense. The judge erred in telling the jury, in effect, that, if self-defense was involved but the Commonwealth proved that the defendant used excessive force, self-defense had no further bearing on their deliberations.

3. The judge's two omissions in dealing with provocation in his charge are conceptually related. The provocation that justifies reasonable action in self-defense also negates a finding of malice in any killing that results from the use of excessive force. It is just one example of the general proposition that reasonable provocation negates malice in any unjustified killing, warranting a verdict of manslaughter rather than murder. In neither instance did the judge adequately explain the mitigating influence of provocation. We reverse the judgment, set aside the verdict, and remand the case for a new trial.

*So ordered.*

---

[3] Defense counsel brought to the judge's attention that self-defense is not an all or nothing proposition but did not object to the omission from the charge of a statement of the consequences of using excessive force in self-defense.