## COMMONWEALTH *VS.* LLOYD GRANT.

No. 98-P-1686.

Suffolk. February 9, 2000. - April 27, 2000.

Present: BROWN, PORADA, & BECK, JJ.

*Practice, Criminal,* Instructions to jury, Presumptions and burden of proof. *Homicide. Malice. Evidence,* Bias. *Witness,* Bias.

At the trial of a murder indictment, the judge twice incorrectly instructed on the Commonwealth's burden of proof on provocation, and, where provocation was a live issue at trial, the erroneous instructions created a substantial risk of a miscarriage of justice. [171-173]

At a murder trial, there was no error in the judge's precluding defense counsel, after a voir dire, from inquiring of a Commonwealth witness with regard to pending criminal charges in order to show bias or motive to fabricate, where the witness's trial testimony was consistent with a statement he had given police before his own criminal charges arose. [173-174]

INDICTMENT found and returned in the Superior Court Department on December 19, 1996.

The case was tried before *Maria I. Lopez,* J.

*Michael R. Schneider* for the defendant.

*Christopher Pohl,* Assistant District Attorney, for the Commonwealth.

PORADA, J. A jury in the Superior Court found the defendant guilty of murder in the second degree. Represented by new counsel on appeal, the defendant claims his conviction should be reversed because the judge's instructions on voluntary manslaughter and provocation as requested by defendant's trial counsel contained burden-placing language creating a substantial risk of a miscarriage of justice. Because we decide that provocation was a live issue at trial and the incorrect burden-placing language was repeated on several occasions in conjunction with erroneous burden-shifting language, we conclude that a substantial risk of a miscarriage of justice occurred and reverse the conviction. *Commonwealth* v. *Carlino,* 429 Mass. 692, 694-

695 (1999). See *Commonwealth* v. *Roderick,* 429 Mass. 271, 278 (1999).

We summarize the evidence presented by the Commonwealth to the jury. At about 6:00 P.M. on June 22, 1996, Tyrone Bernard died of a single gunshot wound inflicted by the defendant. Earlier that day, Bernard and his friend, Granville Winter, were on their way to Bernard's mother's house when Bernard asked Winter to stop at 46 Wainwright Street in Dorchester because Bernard wanted to "square things away" between himself and some friends of Lucien and Seymour Burton who lived at that address. When Bernard arrived at that address, he got out of the car and yelled up at the Burtons and some of their friends who were standing on a second-floor porch overlooking the street. The two Burtons and the defendant came downstairs. Bernard and Lucien Burton were standing on the sidewalk talking to one another. The defendant, with a beer bottle in his hand, walked past them in the direction of Winter, who was standing behind Bernard. While Bernard was talking to Lucien Burton, Winter kept yelling to Bernard to come on and to watch out for the defendant who had turned back to Bernard. At this point, the defendant took several steps toward Bernard, pulled out a pistol, and shot him in the head. The defendant then ran. When the police arrived on the scene, they found Bernard lying on his back with his hands outstretched and with a nine millimeter semiautomatic handgun located on the inside of his shirt with the safety on. Winter and another eyewitness testified that Bernard never drew his weapon at any time during the encounter with the Burtons or the defendant. When the defendant was apprehended and questioned by police some five months after this incident, he denied knowing anything about the incident.

The defendant's evidence consisted of his own testimony and the testimony of several witnesses who were present on the Burton porch during the incident. The defendant testified that he had "no beef" with Bernard but that, when Bernard pointed a gun at him, he became frightened and feared that, if he ran, Bernard would shoot him in the back, so he drew his gun and shot Bernard. The defendant also testified that Bernard had a reputation for violence. As an explanation for his failure to tell the police he acted in self-defense, he said he was threatened by the police and was afraid during their interview of him. The three witnesses who viewed the incident from the Burton porch all testified that Bernard drew his weapon first. One of the wit-

nesses also testified that the defendant shot Bernard only after Bernard pointed a gun at the defendant; that the defendant then dropped his beer bottle, pulled out a gun, and shot Bernard. The defendant also called a police officer who testified that Bernard's gun was found at the scene close to Bernard's right hand.

The defendant's trial counsel requested the judge to instruct on voluntary manslaughter and provocation. The judge gave the defendant's requested instructions which the defendant now claims created a substantial risk of a miscarriage of justice. Where the error was invited by the defendant, our review is limited to whether a substantial risk of a miscarriage of justice occurred. *Commonwealth* v. *DiBenedetto*, 427 Mass. 414, 422-423 (1998). *Commonwealth* v. *Knight*, 37 Mass. App. Ct. 92, 99-100 & n.2 (1994).

Although the principal issue in this case was whether the defendant had acted in self-defense, the Commonwealth concedes that the disputed evidence of provocation required the judge to instruct the jury on the question whether the defendant may have acted in response to provocation. *Commonwealth* v. *Boucher*, 403 Mass. 659, 661-662 (1989). After instructing the jury on murder in the first and second degrees, the judge began by giving the jury the very same burden-placing instruction which the Supreme Judicial Court found to be prejudicial error in *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998).[1] Specifically, the judge incorrectly instructed the jury that malice is negated by provocation only if provocation is proved beyond a reasonable doubt by the Commonwealth. *Ibid.* "The correct rule is that, where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation." *Ibid.* Shortly thereafter, the judge correctly stated that the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion. *Ibid.* But then the judge inadvertently gave the following erroneous instruction that shifted the burden of proof of provocation beyond a reasonable doubt to the defendant:

"Therefore, if after considering all of the evidence you

---

[1]This case was tried approximately four months before the decision in *Commonwealth* v. *Acevedo*, 427 Mass. 714. But see *Commonwealth* v. *Carlino*, 429 Mass. 692, 695 n.1 (1999).

find that the *defendant has proved beyond a reasonable doubt that the circumstances preceding or attending the killing were caused by adequate and reasonable provocation by the deceased or by an act of sudden combat* against the defendant of a kind so as to reasonably excite in him the passion of anger, fear, nervous excitement or heat of blood and that thereupon the defendant, under the influence of such passion and before the cooling of the blood kills the deceased, then you must find the defendant guilty of voluntary manslaughter.

"If, however, after your consideration of all of the evidence you find the Commonwealth has not met this burden of proof, then you must find the defendant not guilty of voluntary manslaughter." (Emphasis supplied.)

Understandably, after the judge completed her instructions to the jury, the jury returned with a question asking to be reinstructed on the definitions of murder in the first and second degrees, voluntary manslaughter, malice, and intent. In reinstructing the jury on voluntary manslaughter, the judge again repeated the erroneous burden-placing language casting upon the Commonwealth the burden of proving beyond a reasonable doubt that the defendant injured the victim as a result of sudden combat or in the heat of passion or as a result of excessive force in self-defense. Shortly thereafter, she again told the jury correctly that "[w]here there is evidence of provocation, the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion." The Commonwealth argues that since the last instruction the jury heard was correct, there was no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Torres*, 420 Mass. 479, 488-491 (1995); *Commonwealth* v. *Niemic*, 427 Mass. 718, 721-722 (1998). See also *Commonwealth* v. *Carlino*, 429 Mass. at 694-695 (reversal where last instruction on provocation incorrect). While the Commonwealth is correct that, in her supplemental charge to the jury, the judge's final words on the subject correctly stated that the Commonwealth bore the burden of disproving provocation, we are not prepared to say that this single sentence overcame her preceding erroneous instruction in the supplemental charge. See *Commonwealth* v. *Torres*, 420 Mass. at 489, quoting from *Francis* v. *Franklin*, 471 U.S. 307, 322 (1985) ("[a] reviewing court has no way of knowing which of

the two irreconcilable instructions the jurors applied in reaching their verdict"). Further, unlike the judge's instructions in *Niemic* and *Torres*, where one incorrect instruction concerning the burden of proof on provocation was sandwiched between instructions that otherwise properly stated the Commonwealth's obligation, here the one correct instruction on the Commonwealth's burden of proof on provocation in the judge's final instructions to the jury at the close of evidence was sandwiched between two incorrect instructions. As in *Commonwealth* v. *Acevedo*, 427 Mass. at 717, "the center of gravity of the provocation instructions was strongly on the side of misstatement."

Notwithstanding the judge's missteps in her instructions on the Commonwealth's burden of proof on provocation, the Commonwealth also argues that these missteps could not have resulted in a substantial risk of a miscarriage of justice because the primary issue in the case was whether the defendant had acted in self-defense and the judge's instructions on self-defense were correct. While we agree with the Commonwealth that the central issue in the case was self-defense, nevertheless, where the evidence presented by the Commonwealth that Bernard never drew his weapon before he was shot was contradicted by the defendant's evidence that the defendant shot Bernard only after Bernard drew his weapon and pointed it at the defendant, provocation was a live issue at trial entitling the defendant to a proper instruction on the Commonwealth's burden of proof on provocation. Consequently, the judge's misstatements on the Commonwealth's burden of proof on provocation posed a substantial risk of a miscarriage of justice, particularly given the somewhat confusing nature of the instructions overall. *Commonwealth* v. *Carlino*, 429 Mass. at 694-695. See *Commonwealth* v. *Roderick*, 429 Mass. at 278 (reversal would have been required because of incorrect burden-placing language in the judge's instructions on Commonwealth's burden of proof on issue of provocation if provocation had been a legitimate issue in the case); *Commonwealth* v. *Niemic*, 427 Mass. at 721-722 (where provocation not a live issue at trial, judge's erroneous instructions on voluntary manslaughter did not create a substantial risk of miscarriage of justice).

We discuss briefly one other issue which may impact on

retrial.[2] The defendant argues that the trial judge erred in refusing to permit him to impeach a Commonwealth witness, Granville Winter, regarding criminal charges that were pending against him at the time of trial in order to show his bias or motive to fabricate evidence for the prosecution. As a general rule, a defendant is entitled to question a witness about pending criminal charges in order to show his or her motive in cooperating with the prosecution. *Commonwealth* v. *Carmona*, 428 Mass. 268, 270 (1998). This is true even though no promise has been made of favorable treatment for the witness's cooperation. *Ibid.* However, a judge in his or her discretion may preclude such an inquiry where the witness has given a statement to the police before his arrest and his trial testimony is consistent with that statement. *Commonwealth* v. *Haywood*, 377 Mass. 755, 762-763 (1979). *Commonwealth* v. *Purcell*, 423 Mass. 880, 883-884 (1996). Here, before his arrest, Winter testified in front of the grand jury that he had seen a gun in Bernard's waistband when he was talking to Lucien Burton and a gun on the ground next to Bernard's body after the shooting but, after his arrest, at trial, Winter initially denied seeing a gun in Bernard's waistband or next to his body. Otherwise, his testimony was consistent both before the grand jury and at trial with the Commonwealth's theory of the case, namely that Bernard never drew his gun and the defendant did not act in self-defense. In light of his consistent testimony, the allowance by the judge of a voir dire to determine if any promises had been made to the witness by the Commonwealth in exchange for his testimony at trial, and the opportunity for the defendant to cross-examine the witness concerning the inconsistencies in his grand jury and trial testimony, we discern no error in the judge's precluding the defendant from inquiring about the pending charges. *Commonwealth* v. *Haywood*, 377 Mass. at 762-763. *Commonwealth* v. *Purcell*, 423 Mass. at 883-884.

*Judgment reversed.*

*Verdict set aside.*

---

[2]The defendant's other claims of error — ineffective assistance of counsel, improper prosecutorial argument, and denial of compulsory process and right to present a defense — are rendered moot by the reversal of his conviction.