COMMONWEALTH *vs.* SAMUEL RODRIGUEZ.

No. 01-P-305.

Suffolk. December 9, 2002. - July 24, 2003.

Present: CYPHER, KANTROWITZ, & COWIN, JJ.

*Homicide. Malice. Self-Defense. Evidence,* Self-defense, Unavailable witness, Previous testimony of unavailable witness, Testimony at prior proceeding, Testimony before grand jury, Joint venturer. *Practice, Criminal,* Instructions to jury, Voluntariness of statement. *Telephone.*

At a murder trial, the chance of jury confusion regarding the issue of provocation was too great for this court to be confident in the justice of the conviction of murder in the second degree, where the judge, having told the jury that all instructions were to be accorded equal weight, gave the jury the traditional formula of an incorrect instruction on what the Commonwealth must prove, followed by a correct instruction, and then a final incorrect formulation at the end of the charge. [611-618]

This court declined to resolve the question whether the judge at a murder trial properly excluded the grand jury testimony of an available witness, given this court's decision to grant the defendant a new trial on another ground. [618-620]

This court concluded that, given the insufficiency of the evidence at the trial of an indictment charging the defendant with murder in the first degree on a joint venture theory, the Commonwealth could not pursue the theory at a retrial. [620-622]

At a murder trial, the judge properly denied the defendant's request to suppress statements made to the police on the ground that he was not notified of his right under G. L. c. 276, § 33A, to use the telephone within one hour after his arrival at the police station, where the failure to give the statutory notice of this right was not intentional. [622-623]

INDICTMENT found and returned in the Superior Court Department on June 24, 1998.

The case was tried before *James D. McDaniel, Jr.,* J.

*Richard J. Shea* for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

COWIN, J. Convicted by a jury of murder in the second degree,

the defendant asserts on appeal that (1) the trial judge erred in excluding the grand jury testimony of an unavailable witness; (2) a jury instruction incorporating the so-called "*Acevedo* error," see *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998), created a substantial risk of a miscarriage of justice; (3) the defendant was entitled to a required finding of not guilty on the theory that he participated as a joint venturer; and (4) the defendant's statements to the police should have been suppressed because he was not notified of his right under G. L. c. 276, § 33A, to use the telephone within one hour after his arrival at the police station. We conclude that the jury instruction improperly incorporated the *Acevedo* error; that the error in that instruction was not overcome by other portions of the charge; and that there was a substantial risk of a miscarriage of justice as a result. Accordingly, we reverse. Because the case may be retried, we address the other challenged rulings as well.

1. *Material facts.* The jury could permissibly have found that on October 5, 1997, the defendant was watching television with friends. One of the friends had been beaten up at a football game a week earlier, and the group decided to go out to look for the attacker. The group went to the Archdale projects in the Roslindale section of Boston, where they confronted another group of young men. The defendant observed one of his companions threaten the latter group with a handgun, while a second friend of the defendant was swinging a stick. The defendant stated to the police,[1] and the jury could have found, that he was standing apart when he saw about five men running toward him. Feeling threatened, he pulled out a knife, closed his eyes, and swung the knife. The victim, Marco Charles, was stabbed in the chest and died five days later.[2]

2. *Jury instructions on provocation.* The defendant's statement to the police, heard by the jury by means of the tape recording, raised the possibility of a defense either on the ground of self-defense or on the ground of a reasonable provocation

---

[1]The defendant did not testify. His statement to the police was tape-recorded and played for the jury.

[2]Other witnesses provided a description of the defendant's participation that showed considerably more aggressive behavior on his part. However, the jury were not required to believe the other version, and, given the issues in the case, we state the evidence in the light most favorable to the defendant.

that was likely to produce in an ordinary person, and that in fact did produce in this defendant, "an intent to kill in a transport of passion or in the heat of blood." *Commonwealth* v. *Amaral,* 389 Mass. 184, 188 (1983), quoting from *Commonwealth* v. *Walden,* 380 Mass. 724, 727-728 (1980). The defendant does not challenge the instructions on self-defense, including the instructions regarding use of excessive force in self-defense. He does challenge the instructions regarding provocation on the basis of *Commonwealth* v. *Acevedo, supra.* The Commonwealth concedes that the instructions on this subject were erroneous, but finds support for the conviction in the alternative propositions that (1) the evidence did not warrant an instruction on the subject; and (2) even if an instruction were required, the overall accuracy of the instructions as a whole was such that the jury could not have been misled by the error.

There was no objection to the provocation instructions as given, nor was there a request that they be given correctly. This was so notwithstanding that *Acevedo* was decided in July, 1998, while the trial in the present case was conducted in April, 2000. Accordingly, we review the instructions to determine whether, given the undisputed existence of error, there is a substantial risk that a miscarriage of justice has occurred. See *Commonwealth* v. *Vinton,* 432 Mass. 180, 188 (2000).

The elements of malice on the part of the defendant, a prerequisite for a murder conviction, may be negated by mitigating circumstances, including reasonable provocation. *Commonwealth* v. *Acevedo, supra* at 715-716. "Malice and adequate provocation are mutually exclusive." *Ibid.* In the absence of a legally sufficient showing of malice, a murder conviction is unsupported, and the highest verdict that can be returned is one of voluntary manslaughter. On the basis of long-standing practice, see *Commonwealth* v. *Lapage,* 435 Mass. 480, 483 n.4 (2001), many trial judges routinely instructed juries that a conviction of voluntary manslaughter required that the Commonwealth prove beyond a reasonable doubt that (1) the defendant inflicted the injury that caused the victim's death; (2) the homicide was unlawful without legal excuse or justification; and (3) the defendant injured the victim as a result of sudden combat or in the heat of passion, or because of the use of

excessive force in self-defense. *Commonwealth* v. *Acevedo*, *supra* at 716. The effect of these instructions was that the jury were incorrectly informed that "malice is negated by provocation only if provocation is proved beyond a reasonable doubt." *Ibid.* Thus, a failure on the part of the Commonwealth to prove elements potentially helpful to the defendant could well have the unanticipated effect of encouraging the jury to return a verdict of murder in the second degree (with its underlying finding of malice) that they might otherwise have rejected. "The correct rule is that, where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation." *Ibid.* See *Commonwealth* v. *Boucher*, 403 Mass. 659, 661 (1989).

A burden-shifting error in a provocation instruction is prejudicial only where the defendant is entitled to a provocation charge in the first place. *Commonwealth* v. *Randolph*, 438 Mass. 290, 299 (2002). Here, the Commonwealth contends that the evidence did not support a finding that the defendant was incited to strike by reasonable provocation; that he was consequently not entitled to any instruction on the subject; and that therefore he could not have been prejudiced by an error in the instruction that was given. The problem with the Commonwealth's characterization of the evidence is that it adopts a view of that evidence that is sympathetic to the Commonwealth's position. The issue here is not whether the evidence was sufficient to warrant a conviction. The question is whether the defendant was entitled to an instruction on a particular subject, and, for this purpose, we examine the evidence in a light most favorable to the defendant. *Ibid.*

The jury in this case heard the defendant's statement that, standing apart from the group, "I see like, like five of the guys or probably less or more than that running towards me. I felt threatened. That's when I closed my eyes, ya know and pulled out my knife, ya know. And I did what I did." The jury could have credited this description of the event. See *Commonwealth* v. *Berry*, 431 Mass. 326, 335 (2000) (jury could have determined that, as result of escalating hostility, defendant lashed out at

victim in heat of passion).[3] If the jury did, they could permissibly have concluded that there was a reasonable doubt whether the defendant acted upon reasonable provocation producing action in the heat of passion, thereby precluding a conviction of murder in the second degree. "If any view of the evidence . . . would permit a verdict of manslaughter rather than murder, a manslaughter charge should be given." *Commonwealth* v. *Brooks*, 422 Mass. 574, 578 (1996).

That leaves for decision the question whether, given the error in an instruction to which the defendant was entitled, the error created a substantial risk of a miscarriage of justice. The conclusion has been far from automatic. In certain circumstances, it has been held that the jury could not have been misled. See *Commonwealth* v. *Niemic*, 427 Mass. 718, 722 (1998). Elsewhere, the court was unable to conclude that "the center of gravity of the provocation instructions was strongly on the side of misstatement." *Commonwealth* v. *Fickling*, 434 Mass. 9, 20 (2001), quoting from *Commonwealth* v. *Acevedo, supra* at 717. Thus, apparently referring to the murder charge of which the defendant was convicted, the court in *Fickling, supra*, stated that the jury could not have concluded that the instruction relieved the Commonwealth of its burden of persuasion beyond a reasonable doubt of every element of the crime charged. See *Commonwealth* v. *Torres*, 420 Mass. 479, 490-491 (1995).

In many cases, an evaluation of the ultimate effect of the *Acevedo* error on the jury is rendered even more difficult by the fact that it is frequently followed almost immediately by a correct statement of the issue on which the Commonwealth has the burden. In those cases, the judge first erroneously instructed the jury that the Commonwealth was required to prove that the defendant injured the victim in the heat of passion caused by reasonable provocation in order for the defendant to obtain a conviction of voluntary manslaughter. This was then often followed, as was the case here, by a statement that, where there is evidence of provocation, the Commonwealth has the burden of proving, likewise beyond a reasonable doubt, that the defendant

---

[3]Had the grand jury testimony of the witness Derrick Farris been admitted, the jury would have had even more evidence that, if believed, would have established a provocation defense. See part 3, *infra*.

did not act in the heat of passion. Consequently, juries were often confronted with one incorrect and one correct statement of the law.

In attempting to decide in a given case whether the jury has been misled by the *Acevedo* error, our courts have looked to the remainder of the instructions in that case for guidance. "[C]onstitutionally erroneous jury instructions are not to be viewed in isolation but rather in the context of the charge as a whole, so that a reviewing court can assess the possible impact of the error on the deliberations of a reasonable juror." *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 560 (2001), quoting from *Commonwealth* v. *Repoza*, 400 Mass. 516, 519, cert. denied, 484 U.S. 935 (1987). Thus, in *Commonwealth* v. *Little*, 431 Mass. 782, 787 (2000), "the instructions on provocation considerations involved in voluntary manslaughter contained infirmities, along with some correct instructions, and the infirmities were compounded as the jury deliberated the case." There, following the traditional misstatement, the judge repeated the error in response to a jury question; subsequent thereto, he provided the jury with a written copy of his instructions on voluntary manslaughter, thereby memorializing the error even more firmly. The court concluded that the misstatements outweighed the correct instructions and gave rise to a substantial likelihood of a miscarriage of justice. *Id.* at 791. See *Commonwealth* v. *McLaughlin*, *supra* at 562 n.3, where an incorrect instruction was followed by a correct instruction, which was then followed by a supplemental instruction (in response to a jury request for simplification) that contained both an incorrect and a correct formulation. When weighed with other deficiencies in the instructions, the sequence created a substantial risk of a miscarriage of justice. *Id.* at 563. In *Commonwealth* v. *Lapage*, 435 Mass. at 484-485, in typical fashion, an incorrect instruction was followed by a correct version, and the judge, having informed the jury that all instructions had equal weight, did not make clear that the correct instruction was of superior importance; the murder conviction was reversed.

This court, when it has confronted the issue, has consistently reversed. See *Commonwealth* v. *Grant*, 49 Mass. App. Ct. 169, 172-173 (2000) (one correct instruction sandwiched between

two incorrect instructions; substantial risk of miscarriage even where final words in supplemental instruction were correct); *Commonwealth* v. *Dempsey*, 49 Mass. App. Ct. 247, 248 (2000) (jury retired to deliberate under conflicting impressions regarding Commonwealth's burden as to provocation; response to jury questions contained one correct and one incorrect statement); *Commonwealth* v. *Montanez*, 55 Mass. App. Ct. 132, 135 (2002) (two "fundamental burden-placing errors," with same errors repeated in supplemental instructions).

Those convictions that have been affirmed by the Supreme Judicial Court have, more often than not, survived for other reasons. See *Commonwealth* v. *Vinton*, 432 Mass. at 189 (evidence did not raise possibility of provocation); *Commonwealth* v. *Simpson*, 434 Mass. 570, 589-590 (2001) (defendant not entitled to instruction on subject); *Commonwealth* v. *Sirois*, 437 Mass. 845, 855-856 (2002) (no provocation instruction warranted); *Commonwealth* v. *Randolph*, 438 Mass. at 301 (other verdicts made it clear jury rejected provocation defense without reference to burden of proof).

Applying the various criteria that have emerged in the wake of *Commonwealth* v. *Acevedo*, we conclude that the chance of jury confusion regarding the provocation issue was simply too great in this case for there to be confidence in the justice of the conviction of murder in the second degree. Near the beginning of the charge, the judge admonished the jury that they were to "regard all of these instructions as of equal importance." Whatever capacity the jury may have to determine that one instruction overcomes another is considerably neutralized by such a warning. See *Commonwealth* v. *Lapage, supra.* The judge then moved on to a discussion of the Commonwealth's burden of proof and the concept of reasonable doubt.[4]

Subsequently, having traversed the rapids of the murder

---

[4]We observe that emphasis on the Commonwealth's burden of proof is an ineffectual antidote for the *Acevedo* error. The error is not that juries were instructed that the Commonwealth did not have a burden; it is that the Commonwealth's burden was assigned to the wrong proposition, i.e., proof of provocation rather than proof of the absence of provocation. Thus, where an *Acevedo* error has been committed, references to the Commonwealth's burden may serve merely to reinforce the mistake.

instructions without mishap, the judge launched into the subject of manslaughter, correctly advising the jury that certain "mitigating circumstances operate to negate the element of malice." Then the *Acevedo* error made its appearance.[5] Following traditional practice, the judge then correctly instructed that "[w]here there is evidence of provocation, the Commonwealth must prove and the jury must find beyond a reasonable doubt that the defendant did not act on reasonable provocation." This was succeeded by brief, unexceptionable comments regarding provocation and its relationship to the killing, after which the judge instructed on the subject of self-defense. That those instructions were correct in all respects does not mitigate the *Acevedo* error. Defenses based on self-defense and on heat of passion brought about by reasonable provocation are not mutually exclusive. "[T]he defendant is entitled to correct instructions on both provocation and self-defense, and the jury are to have an opportunity to consider voluntary manslaughter on both theories." *Commonwealth* v. *Lapage, supra* at 486 n.7.

The judge ended his substantive instructions, and advised the jury regarding the verdict slip; questions during deliberations; the role of the court officers; and the normal length of the court day. He also advised the jury that anticipated punishment should not be a factor in their decision; and that ascertainment of the truth from the evidence was to be their sole mission. He then reverted to a matter of substance as follows: "I don't know if I mentioned it on the voluntary manslaughter, but let me just say this. The final word on that would be that if the government fails to prove each of the essential elements that I outlined to you with respect to manslaughter beyond a reasonable doubt, then obviously you find the defendant not guilty of manslaughter. If the government does prove each of those essential elements beyond a reasonable doubt, then you would find the defendant

---

[5]The specific formulation was as follows: "[T]o prove a defendant guilty of voluntary manslaughter in the circumstances of this case, the Commonwealth must prove each of three elements beyond a reasonable doubt. First, that the defendant inflicted an injury upon the decedent in this case from which he died. Second, that the defendant injured the decedent . . . in the heat of passion. And third, that the homicide was committed unlawfully, without legal excuse or justification."

guilty of manslaughter." These were the last words the jury heard on the subject of voluntary manslaughter.

In these circumstances, the possibility of jury confusion was too great. Having been told that all instructions were to be accorded equal weight, the jury were then given the traditional formula of an incorrect instruction on what the Commonwealth must prove, followed by a correct instruction on the subject. No further comment on the issue took place until it reemerged at the end of the charge in a form, contra *Commonwealth* v. *Acevedo*, that essentially directed the jury to convict the defendant of manslaughter only if the Commonwealth proved the essential elements, including, presumably, that the defendant struck in a heat of passion caused by reasonable provocation. Thus, the jury received a charge on the subject that was incorrect, then correct, then incorrect, see *Commonwealth* v. *Grant*, 49 Mass. App. Ct. at 171-172, with the final incorrect formulation located in a particularly meaningful place at the end of the charge and emphasized by the fact that the judge thought it necessary to return to the matter despite its having been covered earlier. If the holding of *Commonwealth* v. *Acevedo* is to be of more than intellectual interest, a conviction of murder in the second degree following this charge cannot stand. "If the jury had been properly instructed that the Commonwealth had the burden to disprove provocation beyond a reasonable doubt, they might not have found that the defendant acted with malice." *Commonwealth* v. *Acevedo*, 427 Mass. at 715.

3. *Excluded grand jury testimony.* Derrick Farris testified before the grand jury that he was present at the confrontation at the Archdale projects, and that he observed ten or fifteen young men in a circle. He heard the defendant say, "they're trying to jump me again," and heard everyone yelling "as if everybody was starting to square off." Then he noticed the defendant in the middle of a half-circle of people. He testified that the defendant was "arguing with them and somebody was pointing at him and he was standing there and all of a sudden, it was just like, everybody just moved at the same time. Like they had, I don't know if they were backing up, lunging at them, I don't know if [the defendant] lunged at them, I don't know, it was just, [the defendant] swung with his right hand." Farris did not

see anything in the defendant's hand at the time, but did see him make contact "right by the chest" with someone he could not identify.

Farris subsequently successfully asserted his privilege under the Fifth Amendment to the United States Constitution not to testify at the trial, and the defendant offered his grand jury testimony as an alternative. The defendant principally pressed his case before the trial judge on the issue by characterizing the testimony as an out-of-court statement against penal interest made by an unavailable declarant, and therefore an exception to the hearsay rule. See *Commonwealth* v. *Galloway*, 404 Mass. 204, 207-208 (1989). The judge, while conceding that Farris was unavailable, excluded the evidence.[6] On appeal, the defendant asserts that Farris's grand jury testimony should have been admitted on the separate theory that it was embodied in prior recorded testimony "in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered." *Commonwealth* v. *Johnson*, 435 Mass. 113, 135 (2001), quoting from *Commonwealth* v. *Trigones*, 397 Mass. 633, 638 (1986). The Commonwealth responds by claiming that the judge below correctly excluded the testimony on the ground that it did not constitute a statement against penal interest; that the defendant cannot urge on appeal a reason for admission that was not presented to the trial judge; and that, if we were to consider the issue, the testimony should not have been admitted in any event.

Whether, having emphasized that the evidence was admissible as a declaration against penal interest, the defendant waived his right to have the evidence admitted on an alternative ground need not be decided in light of the availability of a new trial.[7] Farris's testimony may be admissible as prior recorded testimony (see discussion, *infra*) if the judge finds that the

---

[6]It is unclear on which of the other *Galloway* factors the judge relied in reaching this conclusion.

[7]We observe that unavailability of the declarant is a prerequisite for admission of a statement against penal interest. *Commonwealth* v. *Galloway*, *supra* at 207. The unavailability of the witness by virtue of his assertion of the Fifth Amendment privilege was argued by the defendant and acknowledged by the

testimony is reliable, that Farris remains unavailable, and that the testimony was given in a proceeding addressed to substantially the same issues, "with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered." *Commonwealth* v. *Beauchamp*, 49 Mass. App. Ct. 591, 600 (2000).

The Commonwealth challenges the proposition that it was motivated to examine Farris before the grand jury on the issue of provocation. It argues that Farris's testimony was submitted solely to establish the identity of the defendant as the stabber, and that it was not required to litigate a possible defense at that stage. Whether a criminal defendant may offer against the Commonwealth the grand jury testimony of an unavailable witness has been characterized as "not determined." Liacos, Brodin, & Avery, Massachusetts Evidence § 8.7.1, at 490 (7th ed. 1999). The question invokes inquiry whether the prior testimony was addressed to the issue on which its subsequent admission is sought, and whether the Commonwealth was motivated to challenge the testimony. There is "some support" for the view that tendering the testimony on direct examination is the equivalent of cross-examining on it, perhaps on the basis that "the government should be considered bound to the trustworthiness of the evidence it chose to present." See *Commonwealth* v. *Meech*, 380 Mass. 490, 495 (1980). Admission may be supported under Fed.R.Evid. 804(b)(1) and under Proposed Mass.R.Evid. 804(b)(1). See *Commonwealth* v. *Martinez*, 384 Mass. 377, 382-383 (1981). Because formal cross-examination is absent in grand jury proceedings, a narrow application of the motivation to cross-examine requirement would preclude grand jury testimony from ever being admitted under the hearsay exception for prior recorded testimony. *Id.* at 383. However, we are not disposed to attempt to resolve these questions on the present record. In the event the matter surfaces at retrial, we leave the issue to be adjudicated on the basis of whatever record is developed at that time.

4. *Joint venture.* The defendant argues that the evidence did

---

judge. This at least suggested the possibility that there might be an alternative ground for admission of an out-of-court statement by an unavailable witness.

not warrant a finding that he participated in the event as a joint venturer, and that accordingly it was error for the judge to deny his motion for a required finding of not guilty on that issue. The judge submitted the case to the jury on both individual and joint venture theories. The defendant does not challenge the sufficiency of the evidence with respect to individual liability.

The motion for a required finding to which the defendant refers was a general motion addressed to the charge of murder in the first degree. With respect to murder in the second degree and manslaughter, the defendant specifically requested instructions on joint venture. Given the request for the instruction, see Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979), and the absence of a specific challenge to the sufficiency of the evidence of joint venture in the motion for required finding, compare *Commonwealth* v. *Berry*, 431 Mass. at 331-332, it appears that the point has been waived.

Nevertheless, the improper submission to the jury of a theory for which there is inadequate evidence automatically creates a substantial risk of a miscarriage of justice. See *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986). Accordingly, we consider the issue notwithstanding the question whether it has been properly preserved. See *Commonwealth* v. *Randolph*, 438 Mass. at 294-295.

For a sufficient case of guilt by reason of a joint venture, there must be evidence that the defendant was present at the scene; with knowledge that another intends to commit the crime or with intent to commit a crime; and by agreement was willing and available to assist if necessary. See *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988); *Commonwealth* v. *Green*, 420 Mass. 771, 779 (1995). The definition implies that the crime in question is actually committed by another. "The Commonwealth needed to present evidence that there was a principal other than the defendant who committed the [crime]." *Commonwealth* v. *Green*, *supra* at 779. Accord *Commonwealth* v. *Berry*, *supra* at 332.

In the present case, there was no evidence that the victim was stabbed by anyone other than the defendant. The Commonwealth presented the case on this theory. The defendant conceded that he stabbed the victim, asserting that he did so in

self-defense or in a heat of passion upon reasonable provocation. Any suggestion that the victim was stabbed by another would have been totally speculative and unfounded. The defendant could not lawfully be convicted on a joint venture theory. The case differs from those cases, see, for example, *Commonwealth* v. *Nascimento*, 421 Mass. 677, 682 (1996), where the evidence supports both individual and joint venture liability, thereby enabling the jury permissibly to convict on either theory. Given the absence of any evidence of, or attention to, the defendant as joint venturer, it is likely that the jury focused exclusively on the defendant as principal and that the error was therefore harmless. Be that as it may, the insufficiency of the evidence on the joint venture theory at the first trial precludes the Commonwealth from pursuing the theory at a retrial. See *Commonwealth* v. *Green, supra.*

5. *The motion to suppress.* The defendant contends that his statements to the police should have been suppressed because he was not notified of his statutory right to use the telephone within one hour of his arrival at the police station. See G. L. c. 276, § 33A.[8] There was no error. The evidence supported the judge's finding that there was no intentional deprivation of the defendant's right to use the telephone. Given his prior experience with the criminal justice system, together with the information given him that he could consult with a lawyer at any time, the defendant knew he had access to the telephone should he have the desire to use it. The defendant in fact asked to use the telephone within one hour of his arrival at the station, and was permitted to do so. The scrupulous attention of the police to the rights of the defendant strongly suggests that the failure to give the notice required by G. L. c. 276, § 33A, was inadvertent, not intentional. Where failure to give the statutory notice is unintentional, suppression has not been required. See *Com-*

---

[8]General Laws c. 276, § 33A, provides: "The police official in charge of the station or other place of detention having a telephone wherein a person is held in custody, shall permit the use of the telephone, at the expense of the arrested person, for the purpose of allowing the arrested person to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney. Any such person shall be informed forthwith upon his arrival at such station or place of detention, of his right to so use the telephone, and such use shall be permitted within one hour thereafter."

*monwealth* v. *Parker*, 402 Mass. 333, 341 (1988), *S.C.*, 412 Mass. 353 (1992), and 420 Mass. 242 (1995); *Commonwealth* v. *Johnson*, 422 Mass. 420, 429 (1996); *Commonwealth* v. *Painten*, 429 Mass. 536, 542 (1999). Contrast *Commonwealth* v. *Jones*, 362 Mass. 497, 503 (1972) (suppression required where violation wilful).

6. *Disposition.* For the reasons stated, the judgment of conviction is reversed and the jury verdict is set aside.

*So ordered.*