COMMONWEALTH *vs.* RODERICK GILMORE.

No. 01-P-1489.

Plymouth. January 21, 2003. - September 9, 2003.

Present: PERRETTA, COWIN, & GREEN, JJ.

*Homicide. Self-Defense. Practice, Criminal,* Instructions to jury, Failure to make objection, Objections to jury instructions, Waiver of appellate rights, New trial.

At a murder trial, the judge's error in instructing the jury on provocation, when viewed in light of the instructions in their entirety, did not create a substantial risk of a miscarriage of justice, and therefore, a second judge did not err in denying a post-appeal motion for a new trial. [234-239]

INDICTMENT found and returned in the Superior Court Department on March 29, 1994.

After review by this court, 48 Mass. App. Ct. 1121 (2000), a motion for a new trial, filed on June 4, 2001, was heard by *Charles J. Hely*, J.

*Charles W. Rankin* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant, having been indicted for murder, G. L. c. 265, § 1, was convicted by a jury of murder in the second degree. His motion for a new trial was denied, and his appeal therefrom was consolidated with his previously filed direct appeal. This court affirmed both the conviction and the order denying the new trial motion in an order and memorandum of decision issued pursuant to Appeals Court Rule 1:28.[1] See *Commonwealth* v. *Gilmore*, 48 Mass. App. Ct. 1121 (2000).

[1]The defendant had argued that (1) the trial judge instructed the jury incorrectly on the subjects of self-defense and manslaughter, specifically with regard to the use of excessive force in self-defense; (2) he was denied effective assistance of trial counsel because counsel "failed to advance a cognizable theory of self-defense, and . . . neglected to pursue an argument that

At the time of trial, as well as at the time of the filing of the defendant's brief in the consolidated appeal, *Commonwealth* v. *Acevedo*, 427 Mass. 714 (1998), had not been decided. That decision was released on July 2, 1998, and was referred to in the Commonwealth's brief filed in the consolidated appeal. After oral argument, but before a decision was rendered, the defendant submitted a letter pursuant to Mass.R.A.P. 16(1), as amended, 386 Mass. 1247 (1982), arguing for the first time that the instruction on provocation was erroneous in light of *Acevedo.* We allowed the Commonwealth's motion to strike the rule 16(1) letter, and affirmed the conviction without reference to the *Acevedo* issue.

The defendant filed a post-appeal motion for a new trial, asserting that the trial judge had mischaracterized the Commonwealth's burden of proof on the issue of provocation in contravention of the principles set forth in *Commonwealth* v. *Acevedo, supra* at 716, and *Commonwealth* v. *Boucher*, 403 Mass. 659, 661-663 (1989). In a parallel argument, the defendant contended that the failure both of trial counsel and of prior appellate counsel to identify and challenge the erroneous instruction constituted ineffective assistance of counsel and requires a new trial.[2] It is the denial of this post-appeal motion and the defendant's appeal therefrom that brings the case back to this court. We conclude, viewing the jury instructions in their entirety, that the so-called "*Acevedo* error" did not create a substantial risk of a miscarriage of justice in this case, and that consequently, there was no ineffective assistance of counsel. Accordingly, we affirm the order denying the defendant's second motion for a new trial.

1. *Material facts.* The jury could permissibly have found the following. On November 14, 1993, the defendant rode his bicycle to the house of his girlfriend, Christina Arsenault, arriving at about 1:00 A.M. He left the bicycle in the back yard and spent the night. Leaving the next afternoon at about 12:30 P.M.,

---

there was reasonable provocation"; and (3) the prosecutor improperly appealed to the emotions of the jury.

[2]The trial judge having retired, the defendant's motion was heard and acted on by another Superior Court judge. That second judge had also presided over the defendant's first motion for a new trial.

he discovered that the bicycle was missing. Returning to the house, he spoke with Christina and, while they were in conversation, he observed the victim, Enrique Torres, ride by on the subject bicycle.

The defendant followed the victim into the hallway of the next house, where he observed the victim apparently working on the bicycle and noticed that several of the bicycle's accessories had been removed. An argument erupted, the defendant and the victim moving from the hallway to the porch. The victim claimed initially that the bicycle belonged to him. When the defendant stated that he had papers proving his ownership, the victim then asserted that he had found the bicycle and had fixed and cleaned it.

The defendant stepped off the porch and began to leave. The victim followed, offering to sell the bicycle to him for twenty dollars. The defendant refused to pay to purchase his own bicycle, and the two exchanged profanities. The defendant then decided to forget about the bicycle and simply leave. As he resumed walking away, he held onto a knife that was in his pocket, while the victim followed, swearing at him. When the defendant turned to say something in return, the victim punched him at least once, and possibly twice, on the head or in the face. There was evidence that the victim was twenty-eight years old; five feet, eleven inches in height; and about 220 pounds in weight.[3] There was also evidence that the defendant was eighteen years old; five feet, ten inches in height; and approximately 160 pounds in weight.

Upon being struck by the victim, the defendant responded by taking the knife from his pocket and stabbing the victim once each in the abdomen and in the back. The defendant testified that he stabbed the victim because he was coming "like he was attacking me again." Other testimony was conflicting as to whether the victim was approaching the defendant, the victim was retreating, or the two were moving toward each other, when the stabbings occurred. A third person separated the men, and the defendant and his girlfriend drove from the scene in her automobile. The entire episode occurred in less than one minute.

[3]The victim's weight was taken during the autopsy and had been increased by fluids given the victim in an effort to save his life.

The victim died as a result of the stab wounds. The medical examiner testified that several superficial cuts on the victim's left hand and wrist were consistent with attempts on his part to fend off an attack.

2. *Discussion.* The Commonwealth argues that the defendant has waived any objection to the instruction on provocation by failing to object at trial and then by failing to raise the issue in his direct appeal[4] or first motion for a new trial. The argument may have been available prior to *Acevedo.* See *Commonwealth* v. *Boucher,* 403 Mass. at 661-663; *Commonwealth* v. *Torres,* 420 Mass. 479, 488-491 & n.8 (1995). It should be noted, however, that, despite these decisions, judges routinely continued to deliver provocation instructions containing the error.[5] See *Commonwealth* v. *Lapage,* 435 Mass. 480, 483 n.4 (2001). Be that as it may, the defendant is entitled to obtain review of unpreserved issues if there has been an error that created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph,* 438 Mass. 290, 294-295 (2002).[6] We therefore turn to the merits.

At the threshold, it must be determined whether the evidence entitled the defendant to an instruction on provocation at all. The principal theory of the defendant at trial was that he acted in self-defense. The judge's instructions on self-defense, including the use of excessive force in self-defense, were accurate, and the jury obviously rejected the theory. That, however, does not by itself validate the instructions on provocation. These are different, not mutually exclusive, defenses. Assuming that there is evidence that supports a finding that the defendant struck in a

---

[4]As indicated above, the defendant did submit a letter in his first appeal referring to the *Acevedo* decision, that case having been decided after the filing of the defendant's brief.

[5]The practice continued in some cases even after the *Acevedo* decision was returned. See *Commonwealth* v. *Rodriguez,* 58 Mass. App. Ct. 610, 612 (2003).

[6]Couching the claim as one based on ineffective assistance of counsel adds nothing. "Our recent opinions have eliminated this problem by equating the ineffective assistance of counsel standard to the substantial risk standard in cases where waiver stems from an omission by defense counsel. . . . If we determine that an error has been committed, we ask whether it gives rise to a substantial risk of a miscarriage of justice — ineffectiveness is presumed if the attorney's omission created a substantial risk, and disregarded if it did not." *Commonwealth* v. *Randolph,* 438 Mass. at 295-296.

heat of passion, "the defendant is entitled to correct instructions on both provocation and self-defense, and the jury are to have an opportunity to consider voluntary manslaughter on both theories." *Commonwealth* v. *Lapage, supra* at 486 n.7.

Here, the judge concluded (correctly, we believe) that the evidence of reasonable provocation and of the defendant's reaction in the heat of passion was sufficient to require an instruction on the subject. In our decision in the defendant's first appeal, we stated that there was evidence that could have supported either self-defense or provocation.[7] For the purpose of determining whether a defendant is entitled to an instruction on a given subject, we examine the evidence in a light most favorable to the defendant. *Commonwealth* v. *Randolph, supra* at 299. There was evidence that, if believed, permitted a finding that the defendant was walking away from what to that point had been merely a verbal confrontation when the victim, a much larger man, struck him without warning and advanced on him apparently with intent to do the defendant additional harm. That the defendant killed the victim "from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat," *Commonwealth* v. *Soaris,* 275 Mass. 291, 299 (1931), was a finding that, while certainly not compelled, was at least permissible. Contrast *Commonwealth* v. *Vinton,* 432 Mass. 180, 189-190 (2000); *Commonwealth* v. *Simpson,* 434 Mass. 570, 589-590 (2001); *Commonwealth* v. *Sirois,* 437 Mass. 845, 855-856 (2002).

One of the judge's instructions to the jury contained the *Acevedo* error.[8] The erroneous *Acevedo* instruction advises the jury that, to justify a verdict of guilty of voluntary manslaughter, the Commonwealth must prove beyond a reasonable doubt three elements: (1) that the defendant inflicted the injury that caused the victim's death; (2) that the homicide was unlawful, without legal excuse or justification; and (3) that the defendant injured the victim as a result of sudden combat or reasonably provoked heat of passion. See *Commonwealth* v. *Acevedo,* 427 Mass. at

[7]The statement was made in response to the defendant's contention that his trial counsel had been ineffective with respect to his pursuit of these two defenses.

[8]This is not contested by the Commonwealth.

716; *Commonwealth* v. *Lapage, supra* at 483-484 & n.4. The effect of the instruction is that the jury are incorrectly informed that malice is negated by provocation only if provocation is proved beyond a reasonable doubt. *Commonwealth* v. *Acevedo, supra.* "The correct rule is that, where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation." *Ibid.* See *Commonwealth* v. *Boucher*, 403 Mass. at 661.

Therefore, given that there was an error in an instruction to which the defendant was entitled, we decide whether the error created a substantial risk of a miscarriage of justice. The aftermath of *Acevedo* has featured a collection of appellate efforts to determine whether the error in a given instance requires a new trial. A representative selection is set forth in *Commonwealth* v. *Rodriguez*, 58 Mass. App. Ct. 610, 614-616 (2003), and nothing is gained by repeating the analysis of that and earlier cases. Some have concluded that, on the instructions as a whole in the particular case, the jury could not have been misled. See *Commonwealth* v. *Niemic*, 427 Mass. 718, 722 (1998); *Commonwealth* v. *Fickling*, 434 Mass. 9, 20 (2001). Others have determined that "the center of gravity of the provocation instructions was strongly on the side of misstatement." *Commonwealth* v. *Acevedo, supra* at 717.

Our task is to evaluate the error "in the context of the charge as a whole, so that [we] can assess the possible impact of the error on the deliberations of a reasonable juror." *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 560 (2001), quoting from *Commonwealth* v. *Repoza*, 400 Mass. 516, 519, cert. denied, 484 U.S. 935 (1987). Here, the judge first gave a comprehensive and correct charge on the elements of murder in the first and second degrees. He then instructed correctly on self-defense, including that a finding of excessive force in self-defense will support a manslaughter verdict. Next he turned to the other mitigating circumstance that may reduce murder to voluntary manslaughter; explained that "mitigating circumstances operate to negate the element of malice," see *Commonwealth* v. *Acevedo, supra* at 716; and detailed what is meant by provocation,

heat of passion, and sudden combat. The judge summarized this portion of the charge with the following statement: "The burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant did not act in the heat of passion and sudden provocation. You may not return a verdict of guilty of murder unless the Commonwealth meets that burden." This formulation was correct. Taken together with the judge's statement that mitigating circumstances negate the element of malice, as well as other statements in the charge, it emphasized the " 'malice' — 'no malice' " fork in the road, see *Commonwealth* v. *Boucher*, *supra* at 663, and made clear to the jury the only conditions on which there could be a conviction of murder.

The *Acevedo* error then materialized.[9] The erroneous instruction improperly treats provocation as an element of manslaughter, which it is not. Voluntary manslaughter is shown where there is an intentional infliction of an injury likely to cause death and actually causing death, together with unlawfulness or a lack of legal justification or excuse. *Commonwealth* v. *Ware*, 53 Mass. App. Ct. 238, 241 (2001), *S.C.*, 438 Mass. 1014 (2003). Provocation is, instead, a defense to murder. *Id.* at 242 n.2. If it is treated as an element of manslaughter, and the Commonwealth fails to satisfy an erroneously allocated burden of proof on the subject, there is a risk that the jury will be unfairly induced to reject an otherwise supportable verdict of manslaughter and to elect instead a verdict of murder in the second degree (in lieu of acquitting the defendant altogether) even though proof of malice may be lacking.

We are satisfied that that risk is not present in this case. The judge's careful instructions on murder left no doubt that the jury could not return a verdict of murder in the second degree without a finding of malice on the part of the defendant, and

[9]The error emerged in the following formulation: "[I]f . . . you find that the Commonwealth has proven beyond a reasonable doubt that the circumstances preceding or attending the killing were caused by adequate and reasonable provocation by the deceased or by an act of sudden combat against the defendant of a kind so as to reasonably excite in him the passion of anger, fear, nervous excitement, or heat of blood and that thereupon the defendant under the influence of such passion and before the cooling of the blood killed the deceased, then you must find the defendant guilty of voluntary manslaughter. If the Commonwealth has not met this burden of proof then you must find the defendant not guilty of voluntary manslaughter."

that in turn a finding of malice required that the Commonwealth prove beyond a reasonable doubt the absence of reasonable provocation and of a response by the defendant in the heat of passion. The jury presumably followed the judge's instruction that they were to return a verdict of guilty of the highest crime proved. Thus, their verdict of murder in the second degree reflects a rejection of the defense of provocation, see *Commonwealth* v. *Randolph*, 438 Mass. at 301, thereby rendering the subsequent error in the manslaughter instruction irrelevant.

We observe further that the instructions as a whole were otherwise unexceptionable. The error was located in a portion of the charge that was plainly separate from the instructions on murder, thereby making it highly unlikely that the jury would have combined the conflicting concepts, and the error was not repeated. Contrast *Commonwealth* v. *McLaughlin*, 433 Mass. at 562; *Commonwealth* v. *Grant*, 49 Mass. App. Ct. 169, 173 (2000).[10] The judge did not state that each of his instructions should be given equal weight; thus, he did not encourage the jury to give undue attention to the erroneous instruction. See *Commonwealth* v. *Lapage*, 435 Mass. at 485. The judge emphasized that the defendant never had to prove anything, see *Commonwealth* v. *Niemic*, 427 Mass. at 721, and there were no other errors in the charge, see *Commonwealth* v. *Carlino*, 429 Mass. 692, 695 (1999). The judge's additional comment, inserted subsequent to the error, that a verdict of manslaughter is not a compromise, but is instead a permissible verdict if the proved facts fit manslaughter rather than murder, also had the effect of encouraging the jury to keep separate the rules governing murder from those governing manslaughter.

The jury would not have been confused or misled with respect to its obligation to find malice as a necessary element of murder in the second degree. The "center of gravity" of the instructions was not on the side of misstatement. See *Commonwealth* v. *Acevedo*, 427 Mass. at 717. The likely effect of the error in this

---

[10]Isolated, as it was in this charge, in a way that could not have affected the jury's understanding of the concepts associated with murder, the error actually increased the Commonwealth's burden of proof by adding another element to the crime of manslaughter. See *Commonwealth* v. *Ware*, 53 Mass. App. Ct. at 242.

case was considerably different from those in which the error has required reversal. See *Commonwealth* v. *Little*, 431 Mass. 782, 787-790 (2000) (error repeated in response to jury question and in subsequently provided written copy of charge); *Commonwealth* v. *McLaughlin*, *supra* at 560-562 & nn.2, 3 (incorrect instruction followed by correct instruction, followed by supplemental instruction containing both incorrect and correct formulation, plus other deficiencies); *Commonwealth* v. *Lapage*, *supra* at 484-485 (left unclear that correct instruction was of superior importance to incorrect version); *Commonwealth* v. *Grant*, *supra* at 172-173 (one correct instruction sandwiched between two incorrect instructions); *Commonwealth* v. *Rodriguez*, 58 Mass. App. Ct. at 618 (incorrect instruction followed by correct instruction, with judge concluding charge by repeating incorrect instruction).

*Order denying motion for new*
*trial affirmed.*