COMMONWEALTH *vs.* RONNY ELLIOT.

Suffolk. October 6, 1999. - December 28, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Practice, Criminal,* Required finding, Severance. *Homicide. Joint Enterprise. Evidence,* Joint enterprise, Relevancy and materiality. *Malice.*

At the trial of an indictment for murder in the first degree, the Commonwealth's evidence was sufficient to warrant the jury to conclude beyond a reasonable doubt that the defendant was guilty as a joint venturer [499-501], and so to conclude that the defendant did not act in the heat of passion on reasonable provocation [501-502].

At the trial of a murder case, the judge correctly excluded proffered testimony of a defense witness which was not relevant to any issue, where the sole reason to call the witness would have been to impeach her with otherwise inadmissible prior inconsistent statements: the proposed testimony was not probative of the defendant's guilt or innocence, and its exclusion did not violate any right of the defendant or cause any prejudice. [502-503]

At the trial of two defendants on indictments for murder in the first degree, the judge did not abuse his discretion in denying one defendant's motions for a severance. [503-504]

INDICTMENTS found and returned in the Superior Court Department on August 8, 1995.

The cases were tried before *Robert W. Banks,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Esther J. Horwich* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. After being tried in the Superior Court jointly with his codefendant, Michael McAfee, see *Commonwealth* v. *McAfee, ante* 483 (1999), the defendant, Ronny Elliot, was convicted of murder in the second degree, armed assault with intent to kill, and possession of a firearm. On appeal, he argues that there was insufficient evidence to support the jury's verdict on the murder charge and that the judge committed prejudicial error in excluding the testimony of a defense witness and deny-

ing his motions to sever his trial from McAfee's. We granted the Commonwealth's application for direct appellate review and heard argument along with McAfee's appeal from his conviction of murder in the first degree. See *Commonwealth* v. *McAfee, supra* at 484. We affirm the defendant's convictions.

1. *Facts.* The facts as the jury could have found them are recited in *Commonwealth* v. *McAfee, supra* at 484-485.

2. *Sufficiency of the evidence.* The defendant contends that the judge erred in denying his motion for a required finding of not guilty on the murder charge.[1] In reviewing such a claim of error, we inquire whether the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to satisfy any rational trier of fact that the essential elements of the crime had been proved beyond a reasonable doubt. See *Commonwealth* v. *Coonan,* 428 Mass. 823, 828 (1999), and cases cited; *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). We conclude that there was no error.

The defendant argues that the Commonwealth failed to prove beyond a reasonable doubt that he was guilty of murder as a joint venturer, because there was insufficient evidence that he had the requisite state of mind for murder or that he acted consciously with McAfee to carry out the offense. We disagree. "In order to convict a defendant as a joint venturer, the Commonwealth must establish that the defendant 'was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement . . . willing and available to help the other if necessary.' " *Commonwealth* v. *Pucillo,* 427 Mass. 108, 112 (1998), quoting *Commonwealth* v. *Bianco,* 388 Mass. 358, 366, *S.C.,* 390 Mass. 254 (1983). Additionally, the Commonwealth must prove that the defendant shared with the principal the mental state required for murder, namely, malice aforethought. See *Commonwealth* v. *Pucillo, supra.* Malice includes intent to kill or to cause grievous bodily injury. Alternatively, malice may be inferred if, in circumstances known to the defendant, "a

---

[1]At oral argument, the defendant extended this claim of error to his conviction for armed assault with intent to kill, arguing that the evidence was not sufficient to prove beyond a reasonable doubt that he acted with a specific intent to kill Alvaro Sanders. For the reasons stated *infra,* we conclude that the evidence permitted a rational inference that the defendant had the requisite intent to commit this offense and that the judge did not err in denying the defendant's motion for a required finding of not guilty.

reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." *Id.*, quoting *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987).

The jury reasonably could have found that the defendant shared McAfee's malice and intent to shoot the victim.[2] "The jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." *Commonwealth* v. *Pucillo, supra*, quoting *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). Moreover, inferences drawn by the jury regarding the defendant's mental state "need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth* v. *Pucillo, supra* at 113, quoting *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). Here, there was evidence of a confrontation between the codefendants and Sanders earlier in the day and of a subsequent pursuit of the codefendants by Sanders and the victim. The defendant, despite having reached the safety of his house, chose to come back out with a loaded rifle, thereby introducing a deadly weapon into a hostile situation. After emerging with the rifle and standing on the porch, he voluntarily stepped down to the sidewalk and joined McAfee behind an automobile, approximately ten to fifteen feet from the victim, where he deliberately raised and pointed the rifle at the victim and Sanders. Although the defendant did not himself shoot the victim, nevertheless the evidence, viewed in the light most favorable to the Commonwealth, established that the defendant voluntarily handed the rifle to McAfee in a "pass and grab" motion after McAfee had twice loudly commanded him to "lace" the victim and Sanders and had thereby made plain his own murderous intent. Moreover, the defendant fled the scene after the shooting and remained at large for eight weeks. A rational jury could infer from this evidence that the defendant intended, or knew that McAfee intended, to injure the victim, and that he reasonably should have known that his act of passing the rifle to McAfee created a plain and strong likelihood that the victim's death would result. See, e.g., *Commonwealth* v. *Pucillo, supra* at 112-113 (defendant's prior knowledge of intended attack on victim supports rational inference of malice under joint venture theory); *Commonwealth* v. *Brooks*, 422

---

[2]The defendant does not deny his presence at the scene. Nor does he dispute that McAfee, the shooter, acted with malice aforethought.

Mass. 574, 577 (1996) (sufficient evidence for joint venture murder conviction where jury could have found that defendant carried firearm to scene of shooting, approached victims, and fled scene with others); *Commonwealth* v. *Chipman,* 418 Mass. 262, 268 (1994) (defendant guilty of murder as joint venturer where jury could infer that he provided firearm to principal, knew or should have known that principal was shooting at passing traffic, and was present at scene when fatal shot was fired); *Commonwealth* v. *Longo,* 402 Mass. 482, 487-488 (1988) (jury could infer joint venturers' malice where principal had stated his intent to harm victim, and they knew that principal was armed). Moreover, this evidence also supports a rational inference that the defendant willingly assisted McAfee in committing the offense, showing that "at the climactic moment the parties consciously acted together in carrying out the criminal endeavor." *Commonwealth* v. *Sexton,* 425 Mass. 146, 152 (1997), quoting *Commonwealth* v. *Young,* 35 Mass. App. Ct. 427, 435 (1993).[3]

Nor are we persuaded by the defendant's argument that the evidence warranted at most a manslaughter verdict because the Commonwealth failed to prove beyond a reasonable doubt that he did not act in the heat of passion on reasonable provocation. As we reasoned in *Commonwealth* v. *McAfee, supra* at 495-496, even if we assume that the evidence sufficed to raise provocation as an issue,[4] a reasonable jury could have found that the

---

[3]We find no merit to the defendant's argument, raised for the first time on appeal, that, assuming he was engaged with McAfee in a joint venture, his failure to fire the rifle establishes that he had withdrawn from the enterprise prior to the murder. "In order to support a theory of withdrawal or abandonment of a joint venture, 'there must be at least an appreciable interval between the alleged termination and [the commission of the crime], a detachment from the enterprise before the [crime] has become so probable that it cannot reasonably be stayed, and such notice or definite act of detachment that other principals in the attempted crime have opportunity also to abandon it.' " *Commonwealth* v. *Cook,* 419 Mass. 192, 202 (1994), quoting *Commonwealth* v. *Fickett,* 403 Mass. 194, 201 (1988). Nothing in the facts of this case indicates that any of these requirements for timely withdrawal was satisfied. While the judge charged the jury on withdrawal, in doing so he gave the defendant a more generous instruction than that to which he was entitled. See *Commonwealth* v. *Cook, supra,* quoting *Commonwealth* v. *Santo,* 375 Mass. 299, 307 (1978) ("There is no requirement that a judge charge on factual situations which are speculative or conjectural and which are unsupported by evidence").

[4]The judge instructed the jury that, if they found evidence of self-defense or provocation, then the Commonwealth assumed the burden of disproving justification or mitigation beyond a reasonable doubt.

Commonwealth had met its burden of proof on this issue. Specifically, the jury could have found that the victim and Sanders, although they chased the defendant and McAfee to Catawba Street, were unarmed at the scene of the shooting, challenged the defendant and McAfee at most to a fist fight, and never actually hit or even attempted to hit the defendant. Moreover, the defendant, despite having reached and entered his house, opted not to remain there or to make a telephone call to the police for assistance, but instead retrieved a loaded rifle and returned outside to confront the victim and Sanders. The jury could reasonably have found that these circumstances would not have overcome an ordinary person's capacity for reflection or restraint and provoked him to kill, and that the defendant did not actually experience this impassioned state of mind. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 629 (1994). See also *Commonwealth* v. *Masello*, 428 Mass. 446, 449-450 (1998) (evidence insufficient to require provocation instruction where victim argued and struggled with defendant and even threw punches at him; sufficient time for defendant to have "cooled off" before he shot victim); *Commonwealth* v. *Zukoski*, 370 Mass. 23, 28-29 (1976) (no provocation instruction warranted where victim swore and threw glass of beer at defendant; threat from thrown glass had passed before defendant struck victim). Moreover, a rational jury could also have found that the Commonwealth had adequately disproved the use of excessive force in self-defense, inasmuch as the evidence sufficed to establish that the defendant, having reached the safety of his house before he reemerged with the rifle, had no reasonable basis to believe that he was in imminent danger of suffering death or serious bodily harm from the victim and had not "availed all proper means to avoid physical combat." *Commonwealth* v. *Niemic*, 427 Mass. 718, 722 (1998), quoting *Commonwealth* v. *Kendrick*, 351 Mass. 203, 212 (1966).

3. *Exclusion of testimony.* The defendant claims that the judge committed reversible error by refusing to allow him to call a witness, Alasandrea Pomales, who, he claimed, had made statements to his trial counsel and private investigator shortly after the shooting that lent support to his self-defense and provocation theories, but who had been intimidated by Boston police officers and by her father to recant these statements at trial. Although the witness, on voir dire, denied having made these

statements and claimed to know nothing relevant to issues at trial, the defendant claims that nevertheless he ought to have been permitted to call and to impeach her by means of her prior inconsistent statements, which, if not objected to by the Commonwealth, could have been admitted as substantive evidence of his innocence. We reject this argument.

Because exclusion of a witness arguably implicates a criminal defendant's Federal and State constitutional right to present witnesses in his own defense,[5] and because the defendant objected at trial to the judge's ruling, thereby preserving his claim of error for appellate review, we must determine whether there was error and, if so, whether it was harmless beyond a reasonable doubt. See *Chapman* v. *California*, 386 U.S. 18, 24 (1967). For the reasons stated in Part 3 of *Commonwealth* v. *McAfee, supra* at 489-492 & n.3, we hold that the judge did not err in excluding Pomales's testimony. Furthermore, even were we to assume error in the judge's ruling, we would be satisfied that it was harmless. As we reasoned in *Commonwealth* v. *McAfee, supra* at 491-492 & n.5, given the Commonwealth's manifest opposition both to Pomales's testimony and to defense counsel's introduction of her alleged prior statements, those prior statements were unlikely to have been admitted as substantive evidence of the defendant's innocence, but only to impeach Pomales's credibility. Thus Pomales's testimony was irrelevant to the issue of the defendant's guilt.[6] See *Commonwealth* v. *Graves*, 363 Mass. 863, 864 (1973), quoting *Chapman* v. *California, supra* at 24 (constitutional error harmless beyond reasonable doubt if it "did not contribute to the verdict obtained").

4. *Severance.* For the reasons stated in Part 2(a) of *Commonwealth* v. *McAfee, supra* at 485-487, we conclude that the

---

[5]See *Commonwealth* v. *McAfee, ante* 483, 491 n.3 (1999), citing *Commonwealth* v. *Vitello*, 367 Mass. 224, 235 (1975) (accused's constitutional right to present defense not abridged by exclusion of witness who lacks personal knowledge related to issues before jury).

[6]The defendant claims that the discrepancy between Pomales's alleged prior statements and her testimony on voir dire is attributable to intimidation by Boston police officers and by her father, supposedly a police officer also. For the reasons noted in *Commonwealth* v. *McAfee, supra* at 492 n.6, this matter more properly may be raised by a motion for a new trial. See Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979).

judge did not abuse his discretion in denying the defendant's motions to sever.[7]

*Judgments affirmed.*

---

[7]We note that the defendant implicitly concedes in his brief that his defense and McAfee's were not mutually exclusive, when he states that McAfee, in undertaking to discredit the eyewitness's identification of him as the shooter, "thereby placed the gun in the hands of Elliot *or* his accomplice" (emphasis added).