## COMMONWEALTH vs. ROBERT E. FORTINI, THIRD.

No. 06-P-178.

Plymouth. January 10, 2007. - April 20, 2007.

Present: GELINAS, CYPHER, & BERRY, JJ.

*Homicide. Practice, Criminal,* New trial, Instructions to jury.

At a murder trial, the judge's failure properly to instruct the jury on reasonable provocation, where the defendant — whom the jury could have concluded felt and responded to an "immediate and intense threat" — was entitled to such instruction [703-706], gave rise to a substantial risk of a miscarriage of justice warranting a new trial [706-708], and where the defendant's primary defense was self-defense, his trial counsel's failure to secure a proper charge on reasonable provocation was manifestly unreasonable [708].

INDICTMENT found and returned in the Superior Court Department on November 9, 1992.

After review by this court, 44 Mass. App. Ct. 562 (1998), a motion for a new trial, filed on October 13, 2005, was heard by *Patrick F. Brady,* J.

*Richard J. Fallon* for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. After a trial on an indictment for murder in the first degree, a jury found the defendant, Robert E. Fortini, III, guilty of murder in the second degree. At trial, the defendant had argued for acquittal based on self-defense. The defendant appealed the conviction; we affirmed. *Commonwealth* v. *Fortini,* 44 Mass. App. Ct. 562 (1998) (*Fortini I*). The Supreme Judicial Court denied further appellate review. 427 Mass. 1106 (1998). The defendant filed a petition for a writ of habeas corpus in the United States District Court; the petition was denied. The denial was affirmed on appeal. *Fortini* v. *Murphy,* 257 F.3d 39 (1st Cir. 2001), cert. denied, 535 U.S. 1018 (2002).

This appeal involves the defendant's motion for a new trial filed in October, 2005, claiming that errors in the voluntary manslaughter instructions on provocation require that he receive a new trial. The motion judge, who was not the judge at trial, denied the defendant's motion, and the defendant appeals. We conclude that the defendant's motion should have been granted because the defendant was entitled to jury instructions on reasonable provocation and that the error in the instructions on provocation created a substantial risk of a miscarriage of justice.

*Factual background.* The facts are recited in the decision on the direct appeal. See *Fortini I, supra* at 563-565. We must consider the facts, however, in the light most favorable to the defendant. *Commonwealth* v. *Acevedo,* 446 Mass. 435, 443 (2006) (*Acevedo II*).[1] Against that background, a jury could have found the following.

After several strangers had visited his home several times throughout the evening looking for one of his female roommates, the defendant went to bed at approximately 11:30 P.M. He was awakened about fifteen minutes later by someone leaning on a car horn outside yelling, "Honky motherfucker, fucking honky, we're going to get you." He got dressed, turned out the light in his room, and went downstairs to the porch to try to read a license plate number for the car. He stayed there for about one-half hour, came back upstairs, and called the police at 12:48 A.M. *Fortini I, supra* at 564 n.5. The defendant reported that a car had driven by his house and that the occupants had sworn and yelled racial epithets. The police told him to keep them informed and to call back if he got a license plate number.

The defendant then loaded his shotgun. He brought a glass of Coca-Cola and the shotgun down to the porch. He took the shotgun because he had been threatened by people driving by the house; there had been a violent incident in the neighborhood a few days before; he was worried that his house was being mistaken for another house; and he would be outside by himself, and he was the only male in the house at the time. The defendant

---

[1] We refer to this case as *Acevedo II* in order to distinguish it from the earlier case in the area, *Commonwealth* v. *Acevedo,* 427 Mass. 714 (1998) (*Acevedo I*).

took a seat on the porch, leaving the porch light off so that he could better see a license plate.

After approximately one-half hour, the defendant heard footsteps coming from a southerly direction and became concerned when he did not hear them pass the house. He heard a half-whisper, "Watch this shit, we're going to wake some motherfuckers up." He then saw an individual quickly mount the porch stairs. As the man reached the top of the stairs, the defendant got up from his chair and took two steps forward while holding the shotgun at his hip. The defendant was scared at that moment; he did not recognize this man.

The defendant yelled, "Hey, get the fuck out of here!" as loudly as he could. The man stopped, turned toward the defendant, looked him up and down, and focused on the gun. The man then quickly "lunged" at the defendant and reached for the gun.

Believing that the man was going for the gun in order to kill him, the defendant feared for his life. He took a step back, but the man was still coming; as the man reached for the weapon, the defendant pulled the trigger and shot him. The defendant then called the police and told them that he had shot someone. The defendant testified that he pulled the trigger on the shotgun "to stay alive, self-defense."

*Standard of review.* We review a judge's decision denying a motion for new trial under Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), "to determine whether there has been a significant error of law or other abuse of discretion." *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). In the case before us, the motion judge was not the trial judge. Therefore, "deference is owed only to the motion judge's assessment of the credibility of the witnesses; [the appellate] court is in 'as good a position as the motion judge to assess the trial record.' " *Commonwealth* v. *Phinney*, 446 Mass. 155, 158 (2006), quoting from *Commonwealth* v. *LeFave*, 430 Mass. 169, 176 (1999). The hearing on the motion for a new trial was nonevidentiary. We are in the same position as the motion judge to evaluate the record.

*Discussion.* The defendant claims that an *Acevedo I* error in the jury instructions created a substantial risk of a miscarriage

of justice.[2] *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998) (*Acevedo I*). An *Acevedo I* error occurs when the jury are improperly instructed that the Commonwealth must prove beyond a reasonable doubt "that a defendant acted with reasonable provocation" for a verdict of manslaughter to be returned. *Id.* at 717. A correct instruction advises the jury that "where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove . . . beyond a reasonable doubt that the defendant did not act on reasonable provocation." *Id.* at 716. "The difference between proof beyond a reasonable doubt that a defendant acted with reasonable provocation and proof beyond a reasonable doubt that a defendant did not act with reasonable provocation is substantial." *Id.* at 717.[3] According to the defendant, his trial counsel and appellate counsel were ineffective for not raising this issue. "[W]e review the defendant's motion for a new trial — whether based on the error itself, or framed as a claim of ineffective assistance of counsel — solely to determine whether the error gives rise to a substantial risk of a miscarriage of justice." *Acevedo II*, *supra* at 442, quoting from *Commonwealth* v. *Russell*, 439 Mass. 340, 345 (2003).

If requested, "a manslaughter instruction is required if, on 'any view of the evidence,' regardless of the credibility, manslaughter may be found." *Acevedo II*, *supra* at 442-443, quoting from *Commonwealth* v. *Carrion*, 407 Mass. 263, 266-

---

[2] The defendant raises several other issues, but in light of the result, we need not reach them.

[3] The erroneous instruction, which was repeated three times, provides as follows:

> "Therefore, if after consideration of all the evidence, you find that the Commonwealth has proven beyond a reasonable doubt that the circumstances preceding or attending the killing were caused by adequate or reasonable provocation by the deceased or by an act of sudden combat against the defendant of a kind so as to reasonably incite in him the passion of anger, fear, nervous excitement, or heat of blood, and that thereupon the defendant, under the influence of such passion and before the cooling of the blood, killed the deceased, then you must find the defendant guilty of voluntary manslaughter. If the Commonwealth has not met this burden, then you must find the defendant not guilty of voluntary manslaughter."

This instruction is essentially identical to the incorrect instruction in *Acevedo I*, *supra* at 716-717.

267 (1990). "Although we view the evidence in the light most favorable to the defendant, we do not confine our analysis of the confrontation to the time frame beginning with the [victim's] arrival at the house . . . [where the deadly interaction took place]. The shootings must be viewed in the context of all the defendant's statements and actions." *Commonwealth* v. *Gaouette*, 66 Mass. App. Ct. 633, 640 (2006).

The Commonwealth essentially concedes that some of the provocation instructions were in error, but argues that there was no substantial risk of a miscarriage of justice because the defendant was not entitled to any instructions on provocation. Additionally, the Commonwealth argues that even if the defendant was entitled to instructions on provocation, the erroneous instructions did not create a substantial risk of a miscarriage of justice. We disagree.

To assess whether the failure to properly instruct the jury created a substantial risk of a miscarriage of justice or constituted ineffective assistance of counsel, we consider, as a threshold matter, whether the defendant was entitled to an instruction on reasonable provocation or sudden combat. *Acevedo II, supra* at 442. *Commonwealth* v. *Gaouette, supra* at 639. Voluntary manslaughter is a "killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980), quoting from *Commonwealth* v. *Soaris*, 275 Mass. 291, 299 (1931). To support an instruction on voluntary manslaughter, "[t]here must be evidence that would warrant a reasonable doubt that something happened which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant." *Id.* at 728. "A jury instruction on reasonable provocation is warranted 'if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool.' " *Acevedo II, supra* at 443, quoting from *Commonwealth* v. *Andrade*, 422 Mass. 236, 237 (1996).

The Commonwealth argues that the confrontation was not sudden and unexpected, but rather anticipated and prepared for by the defendant; that the deadly weapon was purposely brought for protection; and that although the defendant may have been scared by the men driving by his home and swearing, he lay in wait for them and armed himself in advance with a firearm. Although a jury may well agree with the Commonwealth's interpretation of the evidence, the evidence must be viewed in the light most favorable to the defendant. Compare *Acevedo II*, *supra* at 444 n.13. The motion judge's analysis did not cast the evidence in the light most favorable to the defendant. Compare *Commonwealth* v. *Rodriguez*, 58 Mass. App. Ct. 610, 613 (2003).

The defendant maintains that the provocation occurred when he was sitting on the porch, waiting for the car to drive by, but there was an unexpected and aggressive approach on foot. A properly instructed jury could have concluded that a reasonable person in the defendant's position would have felt an "immediate and intense" threat and responded as he did. *Commonwealth* v. *Amaral*, 389 Mass. 184, 189 (1983), quoting from *Commonwealth* v. *Bermudez*, 370 Mass. 438, 442 (1976). Compare *Commonwealth* v. *Rodriguez*, *supra* at 613-614 (defendant entitled to reasonable provocation instruction where he armed himself with a knife but stood apart from the group and only swung the knife, with his eyes closed, when he was being attacked by five or more men); *Acevedo II*, *supra* at 437 (the defendant entitled to reasonable provocation instruction where the defendant left a party after an argument with other guests; the defendant returned with friends to the party less than an hour later; another argument began; several people converged on the defendant; and the defendant, fearing for his life, stabbed the victim).

Having concluded that the defendant was entitled to a proper instruction on reasonable provocation, we consider whether the erroneous instructions created a substantial risk of a miscarriage of justice. To determine whether there has been a substantial risk of a miscarriage of justice, "[w]e review the evidence and the case as a whole. We consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the

absence of an objection was the result of a reasonable tactical decision." *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002). *Acevedo II, supra* at 450.

Here, although the Commonwealth's case was strong, when viewed in the light most favorable to the defendant, there was a possibility that the jury could have found that the defendant had gone onto the porch to obtain a license plate number, was scared and brought the firearm for protection, and was genuinely surprised when the victim appeared on foot and aggressively approached him. Thus, a verdict of guilty of manslaughter based on reasonable provocation was not outside the realm of possibility. The error was of a constitutional nature. "[C]onstitutionally erroneous jury instructions are not to be viewed in isolation but rather in the context of the charge as a whole, so that a reviewing court can assess the possible impact of the error on the deliberations of a reasonable juror." *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 560 (2001), quoting from *Commonwealth* v. *Repoza*, 400 Mass. 516, 519, cert. denied, 484 U.S. 935 (1987).

In the context of the trial, the error was significant. The jury were erroneously instructed on three occasions, each time immediately after a correct instruction on the burden of proof for second degree murder.[4] The jury were correctly and incorrectly instructed in the judge's initial instructions. During deliberations the jury asked to hear again "detailed" definitions of murder in the first degree, murder in the second degree, manslaughter, and self-defense, and the "[jury's] obligation to prove one or the other." The jury were instructed correctly and incorrectly. The jury later again sought "re-clarification" of the meaning of "malice aforethought or the definition or re-clarification of manslaughter." The jury were again instructed correctly and incorrectly. The last instruction before the jury were sent back to deliberate was the erroneous *Acevedo I* instruction; indeed, this was the final instruction before the verdict was returned. See *Commonwealth* v. *Rodriguez*, 58 Mass.

---

[4]The correct instruction provided as follows:

"The burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant did not act in the heat of passion or sudden provocation. You may not return a verdict of guilty of murder unless the Commonwealth meets that burden."

App. Ct. at 618. Contrast *Commonwealth* v. *Gilmore,* 59 Mass. App. Ct. 231, 235, 238 n.10 (2003) (erroneous *Acevedo I* instruction only given once and in an "[i]solated" place in charge; there was no substantial risk of a miscarriage of justice).

Finally, we consider whether counsel had a tactical reason for not insisting on correct instructions. The defendant has not provided us with affidavits from trial or appellate counsel which might illuminate counsels' choices. At trial, the defendant's primary defense was self-defense. See *Fortini I, supra.* Nevertheless, case law suggests that in these circumstances a primary defense of self-defense is not inconsistent with a reasonable provocation defense, and failure to secure a proper charge on reasonable provocation was manifestly unreasonable. See *Acevedo II, supra* at 447.

*Order denying motion for new trial reversed.*

*Judgment reversed.*

*Verdict set aside.*