Neel, Stephen E., J.
Before the Court are defendant Michael McAfee’s and defendant Ronny Elliot’s related motions for new trials pursuant to Mass.R.Crim.P. 30(b). After hearing and a review of the parties’ submissions and the record, the Court denies the motions for the following reasons.
BACKGROUND
In the early evening of July 10, 1995, Michael McAfee (McAfee) and Ronny Elliot (Elliot) had a verbal altercation with Alvaro Sanders (Sanders) at a McDonald’s in the Roxbuiy section of Boston. Sanders, after breaking off the confrontation and perhaps threatening to return, then sought out the assistance of Cassius Love (Love) to retaliate against McAfee and Elliot (defendants).
Once Sanders met up with Love, the two canvassed the area. At some point, Sanders, on foot, and Love, on a bicycle, spied the defendants, who were with a group of other youths on a street comer. Although the defendants ran off upon seeing Sanders and Love, the defendants may have later learned that Sanders told the remaining members of the group that he was going to “fuck [the defendants] up.”
At least one-half to one hour after the altercation at McDonald’s, Sanders and Love, who were at that point driving in Sanders’s car, located the defendants, who were riding bicycles, and chased them the wrong way down a one-way street to Elliot’s house on Catawba Street in Roxbuiy. Sanders stopped the car in the middle of the street, and he and Love got out, leaving the engine mnning and the doors open. It is possible that Sanders had a pistol with him,[1] or at least that Elliot believed that Sanders was armed.[2] Elliot got off his bicycle and ran inside his house. McAfee got off his bicycle and ran down an alley next to Elliot’s house.
Elliot then emerged from his house carrying a rifle and joined McAfee, who had reappeared from the alley, on the sidewalk behind an automobile. Love stood in the middle of the street, directly in front of the defendants, at a distance of about ten to fifteen feet. Sanders stood approximately ten feet to Love’s right, about twenty feet from the defendants.
The four began arguing. Sanders and Love challenged the defendants to a fistfight. Elliot alternated pointing the rifle at Sanders and Love. McAfee twice yelled at Elliot, “Lace them niggers.” When Elliot did not shoot, McAfee grabbed for the rifle, and Elliot passed it to him. McAfee said, “Fuck this. I’m about to lace these niggers,” and aimed the rifle at Love, who, unarmed, raised his hands in the air. Love told McAfee to put down the rifle and challenged him to a one-on-one fistfight. McAfee then cocked the rifle and shot Love multiple times, and fired once at Sanders, missing him. Sanders ran from the scene; Love collapsed on the street and was later pronounced dead. The defendants fled.
The Commonwealth tried the defendants together as joint venturers. The juiy found McAfee guilty of murder in the first degree on theories of both deliberate premeditation and extreme atrocity and cruelty, and found Elliot guilty of murder in the second degree. The juiy also found McAfee guilty of armed assault with intent to murder and illegal possession of a rifle, and found Elliot guilty of armed assault with intent to kill and illegal possession of a rifle. Upon obtaining new counsel, the defendants appealed, and the Supreme Judicial Court, after granting direct appellate review of Elliot’s appeal, affirmed their respective convictions in Commonwealth v. McAfee, 430 Mass. 483 (1999), and Commonwealth v. Elliot, 430 Mass. 498 (1999).
Both defendants filed motions for new trials. The defendants alleged that police had intimidated a defense witness into recanting her anticipated trial testimony. Before the judge to whom the post-conviction matters had initially been assigned acted on those motions, each defendant obtained further successor counsel and filed an additional memorandum in support of his motion. The defendants’ supplemental memoranda raised claims of juiy instruction error pursuant to the Supreme Judicial Court’s ruling in Commonwealth v. Acevedo, 427 Mass. 714 (1998).
After the defendants’ new trial motions were ultimately reassigned to the undersigned judge, the defendants, having failed to locate the allegedly intimidated witness, jointly moved for the Court to hear and rule only on the juiy instruction error claims. Allowing that motion, this Court heard oral argument and received post-argument memoranda from Elliot and the Commonwealth.[3]
DISCUSSION
Each defendant argues that the Court should grant him a new trial because the trial judge gave the juiy erroneous instructions which allowed the juiy to convict the defendants of murder without finding beyond a reasonable doubt that the defendants had acted with malice. Specifically, the defendants assert, and the Commonwealth concedes, that the trial judge, in instructing the juiy on provocation, committed the error outlined in Commonwealth v. Acevedo, 427 Mass. 714 (1998).[4] In the main charge, the judge instructed the juiy, “In order to prove a defendant guilty of voluntary manslaughter, the Commonwealth must prove . . . that the defendant injured the victim as a result of sudden combat or in the heat of passion or using excessive force in self-defense . . .” (Tr. vol. v. at 144.) In the supplemental charge, the judge essentially repeated the instruction: “So, in order to prove either of these defendants guilty of voluntary manslaughter, the Commonwealth must prove . .. that the defendant injured the victim as a result of being in sudden combat or in the heat of passion or using excessive *619 force in self-defense . . .” (Tr. vol. v. at 171.) As explained by the Supreme Judicial Court, “That language incorrectly told the jury that malice is negated by provocation only if provocation is proved beyond a reasonable doubt.” Acevedo, 427 Mass. at 716. “The correct rule is that, where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation.” Id.[5] Neither defendant objected to the judge’s instructions at trial or raised the issue on direct appeal. However, the defendants now argue that they are entitled to new trials because the improper jury instructions violated their due process rights and created a substantial risk of a miscarriage of justice. McAfee additionally argues that he is entitled to a new trial because his trial counsel’s failure to object to the improper instruction and his appellate counsel’s failure to appeal the error deprived him of constitutionally effective assistance of counsel.
“A new trial may be granted under Mass.R.Crim.P. 30(b) ... if it appears that justice may not have been done.” Commonwealth v. Stewart, 383 Mass. 253, 257 (1981) (quotation omitted); Commonwealth v. Alebord, 68 Mass.App.Ct. 1, 10 (2006). Where a defendant makes no objection to an error at trial and fails to raise the error on direct appeal, the error is waived, and a court “reviewfs] the defendant’s motion for a new trial — whether based on the error itself or framed as a claim of ineffective assistance of counsel — solely to determine whether the error gives rise to a substantial risk of a miscarriage of justice.” Commonwealth v. Russell, 439 Mass. 340, 344-45 (2003), citing Commonwealth v. Randolph, 438 Mass. 290, 293-96 (2002), and Commonwealth v. Azar, 435 Mass. 675, 685-87 (2002); Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006); Commonwealth v. Fortini, 68 Mass.App.Ct. 701, 704 (2007).[6] “Onamotion for anew trial, the burden of establishing the grounds for a new trial rests on the defendant.” Commonwealth v. Hudson, 446 Mass. 709, 714-15 (2006), citing Commonwealth v. Comita, 441 Mass. 86, 93 (2004). As explained below, neither McAfee nor Elliot satisfies his burden of establishing the grounds for a new trial.
As a threshold matter, this Court must determine whether the evidence at trial warranted an instruction on voluntary manslaughter. See Acevedo, 446 Mass. at 442; Fortini, 68 Mass.App.Ct. at 705; Commonwealth v. Gaouette, 66 Mass.App.Ct. 633, 639 (2006); Commonwealth v. Gilmore, 59 Mass.App.Ct. 231, 234 (2003). The “law on the evidence permitting a voluntary manslaughter instruction is well settled.” Commonwealth v. LeClair, 445 Mass. 734, 740 (2006), quoting Commonwealth v. Keohane, 444 Mass. 563, 569 n.5 (2005). “Voluntary manslaughter is unlawful homicide arising not from malice, but ‘from the frailly of human nature,’ as in a case of ‘sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense.’ ” Commonwealth v. Carrion, 407 Mass. 263, 267 (1990), quoting Commonwealth v. Nardone, 406 Mass. 123, 130-31 (1989); accord Acevedo, 446 Mass. at 443. Both defendants assert that the evidence supported giving a voluntary manslaughter instruction based on reasonable provocation.
“A provocation instruction need not be given unless there is evidence, viewed in the light most favorable to the defendant, that is ‘sufficient to create a reasonable doubt in the minds of a rational jury that a defendant’s actions were both objectively and subjectively reasonable.’ ” Commonwealth v. Zagrodny, 443 Mass. 93, 106 (2004), quoting Commonwealth v. Groome, 435 Mass. 201, 220 (2001), quoting Commonwealth v. McLeod, 394 Mass. 727, 738 (1985); accord LeClair, 445 Mass. at 741. “That is, the jury must be able to infer that a reasonable person would have become sufficiently provoked and would not have ‘cooled off by the time of the homicide, and that in fact a defendant was provoked and did not cool off.” McLeod, 394 Mass. at 738, citing Commonwealth v. Walden, 380 Mass. 724, 728 (1980), and Commonwealth v. Rooney, 365 Mass. 484, 494-95 (1974), and cases cited; Acevedo, 446 Mass. at 443.
“It is well established that ‘provocation must come from the victim.’ ” Acevedo, 446 Mass. at 444, quoting Commonwealth v. Ruiz, 442 Mass. 826, 838-39 (2004); see generally LeClair, 445 Mass. at 739-41, and cases cited (reaffirming “well-established rule that evidence of provocation by a third party, rather than the victim of a homicide, is insufficient to warrant a voluntary manslaughter instruction”).[7]
Viewed in the light most favorable to the defendants, the evidence of provocation from the victim, Love, did not warrant a voluntary manslaughter instruction based on reasonable provocation. Although Love joined in chasing down the defendants and confronting them on Catawba Street, any provocation that might have resulted from that chase dissipated when Elliot ran inside his house and McAfee ran down the alley next to Elliot’s house. See, e.g., Keohane, 444 Mass. at 568 (“[EJven where sufficient provocation exists, if a defendant leaves the scene of the provocation . . . and then returns to attack the victim, the defendant is considered to have had adequate opportunity for his anger to subside”); Commonwealth v. Amaral, 389 Mass. 184, 189 (1983) (“Even if we assume that the shoving incident minutes before the shooting could create reasonable provocation, any threat to the defendant stemming from the shoving incident disappeared when the defendant left the scene”).
The ensuing argument between Love and the defendants, and Love’s challenges to a fistfight, without more, were also insufficient provocation to warrant a manslaughter charge: “it is a settled rule of law, that *620 no provocation by words only, however opprobrious, will mitigate an intentional homicide, so as to reduce it to manslaughter,” Commonwealth v. Webster, 5 Cush. 295, 305 (1850). See, e.g., Commonwealth v. Burgess, 450 Mass. 422, 438 (2008), and case cited (“Insults and arguments are insufficient provocation for manslaughter”); Commonwealth v. Masello, 428 Mass. 446, 449-50 (1998), and cases cited (stating that escalating, heated argument without more does not constitute adequate provocation).
Defendants contend that several cases require a different conclusion.[8] They rely principally on Commonwealth v. Fortini, supra, 68 Mass.App.Ct. 701, for the proposition that reasonable provocation can exist where “several people are involved in the provocation, but where only one person was killed by the defendant.” Elliot’s Supplementary Post-Hearing Memorandum, at 3-4, wherein defendant also quotes the following from Fortini:
Compare Commonwealth v. Rodriguez, [58 Mass.App.Ct. 610 (2003),] at 613-14 (defendant entitled to reasonable provocation instruction where he armed himself with a knife but stood apart from the group and only swung the knife, with his eyes closed, when he was being attacked by five or more men); Acevedo II, supra at 437 . . . (the defendant entitled to reasonable provocation instruction where the defendant left a parly after an argument with other guests; the defendant returned with friends to the party less than an hour later; another argument began; several people converged on the defendant; and the defendant, fearing for his life, stabbed the victim).
Commonwealth v. Fortini, 68 Mass.App.Ct. at 706 (emphasis supplied by defendant).
The problem with defendants’ argument is that, in each of the cases on which defendants rely, the victim himself also engaged, just prior to the killing, in provocation of the defendant sufficient to warrant a juiy instruction on reasonable provocation.
In Fortini in which (as defendants here correctly point out) the defendant was in fear because of a course of threatening behavior by the victim and his cohorts in the preceding two hours, the final moments were veiy different from those in the present case. Fortini, sitting in the dark on his front porch, just after midnight, on alert for a car from which he had earlier heard threats shouted, heard footsteps and an ominous whisper.
He then saw an individual quickly mount the porch stairs. As the man reached the top of the stairs, the defendant got up from his chair and took two steps forward while holding the shotgun at his hip. The defendant was scared at that moment; he did not recognize this man.
The defendant yelled, “Hey, get the fuck out of here!” as loudly as he could. The man stopped, turned toward the defendant, looked him up and down, and focused on the gun. The man then quickly “lunged” at the defendant and reached for the gun.
Believing that the man was going for the gun in order to kill him, the defendant feared for his life. He took a step back, but the man was still coming; as the man reached for the weapon, the defendant pulled the trigger and shot him.
Commonwealth v. Fortini, 68 Mass.App.Ct. at 703.
The Commonwealth argued that Fortini was not entitled to any instruction on provocation because, inter alia, “although the defendant may have been scared by the men driving by his home and swearing, he lay in wait for them and armed himself in advance with a firearm.” Id. at 706. Viewing the evidence in the light most favorable to the defendant, however, the court stated that “the defendant maintains that the provocation occurred when he was sitting on the porch, waiting for the car to drive by, but there was an unexpected and aggressive approach on foot. A properly instructed juiy could have concluded that a reasonable person in the defendant’s position would have felt an ‘immediate and intense’ threat and responded at he did.” Id.
Thus, the court concluded that the provocation justifying the juiy instruction was the victim’s confrontation with Fortini on the porch. While the court states, earlier in the opinion, that “we do not confine our analysis of the confrontation to the time frame beginning with the [victim’s] arrival at the house . . . [where the deadly interaction took place] . . . The shootings must be viewed in the context of all the defendant’s statements and actions!,]” id. at 705 (citation omitted), the court looks to the earlier events to inform its conclusion as to whether a jury could find that Fortini’s state of mind at the time of the victim’s lunge for the shotgun was the result of reasonable provocation.
The difference between Fortini and the present case is that in Fortini “provocation [came] from the victim,” Acevedo, supra, 446 Mass. at 444, i.e., when the victim lunged for the shotgun. Here, there is no evidence that Love, standing in the street at a distance from defendants, behaved in any manner sufficient to constitute reasonable provocation. Absent any such conduct on his part, and in view of defendants’ emergence from the house and alley to confront Sanders and Love, the events leading up to that confrontation (and whatever knowledge defendants had regarding those events) do not, in and of themselves, constitute reasonable provocation.
That Elliot may have believed Sanders was armed does not alter the conclusion. In the recently decided case of Commonwealth v. Espada, supra, the defendant had argued with the victim, whose name was Nate, and had been assaulted by one of the victim’s friends. During the argument, defendant heard the victim say something on the telephone about “get[ting] *621 the heat.” Later that same evening, while defendant was fixing a flat tire in an alley near his home, he saw the victim and his friends, and confronted them, showing a handgun. The group got in their car and began to drive away. The victim approached the car, saw what he believed could be a weapon in the hand of one of the occupants,[9] and fired his own handgun twice into the car, killing the victim.
The Supreme Judicial Court upheld the trial judge’s refusal to give an instruction on reasonable provocation:
The defendant . . . states that his fear and excitement were due to the “late hour, dark setting, knowledge that Nate might have a gun or weapon, [the defendant’s] display of the gun to the group as they got in the car, and the group’s . . . attacking him and slashing his tire a few hours before.” According to the defendant’s own testimony, he had the tools needed to fix his flat tire right away but instead he purchased a gun, then returned to his car, and parked it in front of the dumpster . . . instead of elsewhere, despite the fact that he noticed, as he was changing his tire, “that [the victim’s friend’s] car was back in the alleyway.” Viewed in the light most favorable to the defendant, a minimum of one and one-half hours passed between the assault and when he returned to change his tire. This evidence would not allow a juiy to “infer that a reasonable person would have become sufficiently provoked.” Commonwealth v. McLeod, 394 Mass. 727, 738, cert. denied sub nom. Aiello v. Massachusetts, 474 U.S. 919 (1985). Moreover, there is no indication that Nate provoked the defendant at the time of the shooting. Commonwealth v. Acevedo, 446 Mass. 435, 444 (2006), quoting Commonwealth v. Ruiz, 442 Mass. 826, 838-39 (2004) (“It is well established that ‘provocation must come from the victim’ ”).
Commonwealth v. Espada, supra. Here, while the evidence supports a finding that Sanders (not the victim, Love) was armed, there is no evidence that Sanders displayed a firearm during the final confrontation; at most, the evidence supports a finding that Elliot believed that Sanders was armed. In Espada, where the defendant believed that the victim himself was armed, such a belief, even coupled with additional evidence that defendant thought he actually saw a weapon just before he fired, was insufficient in the circumstances to require a provocation instruction.
To be sure, in the present case, unlike Espada, the confrontation between the defendants and Sanders and Love continued, off and on, up to the end of the final chase and shortly before Elliot emerged from his house, and McAfee from the alley. Nevertheless, as noted above and reaffirmed by Espada,[10] even a matter of minutes suffices to end the exciting effect of what otherwise might constitute reasonable provocation. [11]
Other cases upon which defendants rely are similarly unavailing. In Commonwealth v. Rodriguez, supra at 611, the defendant told police, “and the jury could have found, that he was standing apart when he saw about five men running toward him. Feeling threatened, he pulled out a knife, closed his eyes, and swung the knife. The victim . . . was stabbed in the chest and died ...” The victim, by running toward Rodriguez together with the other men, himself provided the necessary provocation. Similarly, in Commonwealth v. Acevedo, supra at 438: as the victim, together with friends, approached, Acevedo “saw [the victim] look at him, bite his lip, make a fist, and run toward him. Someone hit the side of defendant’s face, knocking him to the ground. He felt people beating him about the head and attempted to push them away, but could not. The defendant then pulled his knife from his pocket, opened it, and swung it several times.” There was no evidence of any such conduct by Love in this case.
Finally, Elliot cites Commonwealth v. Baker, 346 Mass. 107 (1963), in which “Baker testified that he first went to get his gun and ammunition, and then followed the persons he confronted, one of whom he killed with the gun.” Elliot’s Supplementary Post-Hearing Memorandum, at 4 (emphasis in original). The altercation in Baker took place on a beach. The victim, with several cohorts, was in Baker’s view intending to interfere with Baker’s sloop. The defendant stated that the victim
“appeared to me to be furiously angry. He was hurrying, rushing towards me, really plunging at me. His face was contorted and red. He seemed to be in a violent temper.” When he was within a step or two of the defendant, he more or less shouted, “You can’t put me off the beach.” At the time the gun was either at the defendant’s side or in his pocket. The other men were in “sort of a semicircle.” “I was frightened at that time. I felt sure that they were ganging up on me, and they were going to jump me ... I really was in terror.” The deceased then struck the defendant in the face “to the side of the nose.” .. . The defendant’s glasses were knocked off . . . The deceased said, “If you want to fight, I’ll give it to you." “I said, ’’If you come on, I’ll shoot." The deceased replied, “You don’t dare shoot.” “Frankly, I didn’t dare not to. He was too close; and the others were too close behind him . . . And the only thing I could do was shoot...” After the shot was fired “He kept on coming ... He was even closer. And I really was terrified at that time that he was going to get the blow in. And, so, I shot at his shoulder at that time to try to stop him and the other men who were coming in from both sides and ganging up on [sic], as I saw... He pitched forward on his face, and the other men came to a stop.”
Commonwealth v. Baker, supra at 112-15. As in the other cases on which defendants rely, the victim in Baker provided sufficient provocation to merit an instruction on reasonable provocation.
*622 In light of the foregoing, and viewed in the light most favorable to the defendants, the evidence in this case did not allow an inference that a reasonable person would have become sufficiently provoked by Love’s conduct such that a voluntaiy manslaughter instruction based on reasonable provocation was warranted.[12]
Because the evidence did not warrant a voluntaiy manslaughter instruction, the so-called “Acevedo errors” made at the defendants’ trial did not prejudice the defendants. Commonwealth v. Simpson, 434 Mass. 570, 589-90 (2001); cf. Randolph, 438 Mass. at 299 (“A burden-shifting error in a provocation instruction is prejudicial if the defendant was entitled to such a charge . . .”). Accordingly, the erroneous instructions did not create a substantial risk of a miscarriage of justice for either McAfee or Elliot, see Randolph, 438 Mass. at 298 (stating that only where error prejudices defendant can it create a substantial risk of a miscarriage of justice), and neither McAfee’s trial nor appellate counsel rendered constitutionally ineffective assistance, see id. at 296.
ORDER
For the reasons stated above, defendant Michael McAfee’s Motion for New Trial is DENIED, and defendant Ronny Elliot’s Motion for New Trial is DENIED.

Dawn Christie testified that Sanders had visited her apartment that day prior to the shooting and, as he left, showed her a handgun and loaded it in her presence. She also testified that Sanders stated “I’m about to get these niggers down here,” and drove off fast. Tr. vol. IV at 147.

Sanders testified that he told defense counsel, before trial, that “Ronny” probably thought Sanders had a gun on Catawba Street that night. Tr. vol. II at 39.

The Court in part deemed the defendants’joint motion a motion to withdraw their witness intimidation claims but did so without prejudice to the reassertion of those claims in the future. (Order Feb. 20, 2007.)

Although the defendants’ trial occurred prior to Acevedo, “the holding in Acevedo was stated in substantially similar terms in Commonwealth v. Boucher, 403 Mass. 659, 663 (1989),” Commonwealth v. Fickling, 434 Mass. 9, 18 n.14 (2001), citing Commonwealth v. Carlino, 429 Mass. 692, 695 n.1 (1999).

Without elaboration, the Supreme Judicial Court noted its approval of the provocation instructions given at the defendants’ trial. McAfee, 430 Mass. at 495 n.9; Elliot, 430 Mass. at 501 n.4. As the trial judge followed each of his incorrect instructions with a correct instruction (tr. vol. v. at 145-46, 172), the Supreme Judicial Court may have been speaking to the propriety “of the charge as a whole,” Commonwealth v. Lynch, 439 Mass. 532, 543 (2003), an issue that this Court need not reach in light of its threshold conclusion that the evidence did not warrant a provocation instruction. (The court was careful to signal in each case that it was not deciding whether the evidence was sufficient to require a provocation instruction. See McAfee, 430 Mass. at 495-96 (“Even if we assume that the evidence, when viewed in the light most favorable to the defendant, was sufficient to raise . . . provocation as [an issue] . . .” (emphasis added); Elliot, 430 Mass. at 501.)

Although the error involved here “may raise a constitutional question,” Acevedo, 427 Mass. at 717, “(t]he rule of waiver applies equally to constitutional claims which could have been raised, but were not raised on direct appeal,” Commonwealth v. Watson, 409 Mass. 110, 112 (1991) (quotation omitted); accord Commonwealth v. Fredette, 56 Mass.App.Ct. 253, 259 n.9 (2002) (“Even errors of constitutional dimension are subject to waiver if not properly preserved at trial”); see also Commonwealth v. Rodriguez, 67 Mass.App.Ct. 636, 641 (2006), citing Commonwealth v. Miranda, 22 Mass.App.Ct. 10, 18-19 & n.20 (1986) (unobjected-to constitutional error subject to substantial risk standard of review).

The Supreme Judicial Court has just reaffirmed the principle in Commonwealth v. Espada, SJC-09381 (slip op. February 20, 2008) (“there is no indication that [the victim] provoked the defendant at the time of the shooting...” [citing Acevedo and Ruiz:] (“It is well established that ‘provocation must come from the victim’ ”)).

Although at oral argument on the defendants’ motions the Commonwealth appeared to concede that the defendants were entitled to a provocation instruction, this Court need not accept the Commonwealth’s apparent concession where there was insufficient evidence of provocation presented at the defendants’ trial. E.g., Zagrodny, 443 Mass. at 105-06 & n. 16. In any event, the Commonwealth clarified its position in its post-hearing memorandum:.".. the commonwealth does not dispute the defendants’ claim that they were entitled to instructions on reasonable provocation if either Sanders or Love engaged in adequately provocative conduct, as there is no dispute that Sanders and Love were acting in concert to challenge the defendants to a fight. See Commonwealth v. Acevedo, [446 Mass. at 444-45 & nn. 14-15] (citing cases in which manslaughter instructions were warranted based on evidence that victim was part of group that attacked defendant)." (Emphasis added.) As the Court concludes below, evidence of adequate provocation by Love was necessary and was lacking, and therefore no instruction on reasonable provocation was required.

‘The tinted window rolled down, and the defendant saw something ‘like a movement, like a reflection of somebody’s hand’ or a ‘flash.’ He was unsure of what he saw, but thought it could have been ‘a weapon of some type.’ After the flash, the defendant pulled his gun and shot at the car.” Id.

“See Commonwealth v. McLeod, [394 Mass. 727 (1985),] at 738-39 (fifteen to thirty minutes sufficient cooling off period and ‘significantly longer . . . than is usually the situation in manslaughter cases’); Commonwealth v. Coleman 366 Mass. 705, 707 (1975) (no manslaughter instruction where defendant left scene after being punched, and then returned and shot victim several minutes later).” Commonwealth v. Espada, supra.

The court in Espada, at n.7, also distinguishes Fortini, upon which Espada, like defendants here, relied: “The facts in Commonwealth v. Fortini, 68 Mass.App.Ct. 701 (2007) . . . are easily distinguished. In that case, the defendant had been harassed earlier in the evening by strangers in a vehicle and so he sat on his porch with a shotgun hoping to spot a registration number. Id. at 702-03. A stranger approached his porch, ” ‘lunged’ at [him] and reached for the gun." Id. at 703. The defendant “took a step back” and shot him. Id. The court held that the defendant was entitled to reasonable provocation instructions. Id. at 706. Unlike the Fortini case, in this case, the defendant approached the victim."

As the defendants were not physically attacked and neither defendant took the opportunity to avoid combat, the evidence also did not warrant a manslaughter instruction based on sudden combat, e.g., Commonwealth v. Pasteur, 66 Mass.App.Ct. 812, 822 (2006), and cases cited, or on excessive force in self-defense, e.g., Commonwealth v. Berry, 431 Mass. 326, 335 (2000), and cases cited. The defendants do not argue otherwise.